* Parker, C. J.
The pauper’s original settlement was in Lancaster, that being his father’s settlement at the time of his birth. On the annexation of that part of Lancaster where the father dwelt to Shrewsbury, his settlement was transferred to the latter town; for although no express provision respecting paupers appears in the act providing for their annexation, yet it is a necessary effect of such annexation, that the town which acquires the new inhabitants and new territory should also incur such burdens as may be incident to the new relations.
It does not appear, however, that the pauper was, in 1781, when the annexation took place, a member of his father’s family. On the contrary, it was stated at the bar, and not denied, that, before that time he had removed without the commonwealth; and as he came of age long before that period, it is to be presumed that he was emancipated, and capable of gaining a settlement for himself; so that his settlement was not transferred with his father’s ; nor did the annexation operate upon him personally to change his settlement, on account of his absence, as was settled in the case of Windham vs. Portland. (2)
The pauper’s settlement therefore remained in Lancaster, but for the provisions in the statute incorporating West Boylston. By that act the part of Lancaster in which the pauper’s father had resided, and which afterwards became a part of Shrewsbury, was constituted, with parts of other towns, the town of West Boylston.
It has been contended that, to bring a pauper within the provision of this statute, he should literally have gained a settlement in one of the towns out of which West Boylston was created ; and so that this pauper, never having had a settlement in any town but Lancaster, which is not one of the component parts, cannot be charged to West Boylston, but belongs still to Lancaster.
*222 The obvious meaning, however, of the legislature was to make West Boylston liable, in respect to the territory of which it had acquired the municipal jurisdiction ; in order that, as it acquired by its incorporation * all the rights and priv ileges, which the several towns that were dismembered had enjoyed, it should also succeed to all the duties and burdens to which they had before been liable, according to the reasonable maxim, Qui sentit commodum, sentiré debet et onus. Lancaster there fore, which had, ever since the year 1781, lost the privilege of tax ing the lands and property of the inhabitants of that part of its former territory which had successively been transferred to Shrews-bury, Boylston, and West Boylston, is discharged from the burden of supporting any of those inhabitants, or others who derive a settlement under them, (a)

Judgment on the verdict

 4 Mass. Rep. 384

 [Fitzburgh vs. Westminster, 1 Pick. 144. — Southbridge vs. Charlton, 15 Mass. Rep. 248. — Hallowell vs. Bowdoinham, 1 Gr. 129. — Lancaster vs. Sutton, 16 Mass. Rep. 112.— Westborough vs. Franklin, 15 Mass. Rep. 254.-Princeton vs. Boylston, 15 Mass. Rep. 257. — Ed.]