The action being continued for advisement, the opinion of the Court was delivered, at the following April term, by
Parker, C. J.
The plaintiffs found their claim against the defendants upon the supposed settlement of the paupers, derived from that of their great-grandfather, Benjamin Glazier, in that part of Lancaster which now makes a part of West Boylston. It appears that, during his minority, he either lived in his father’s family, or in the family of a master, as his apprentice; both of whom resided near the centre of the town of Lancaster, and not within the limits of what has since become West Boylston ; but when about twenty-three years of age he removed within those limits, and died there in 1756 It does not appear how long he lived there; so that here is nothing in the case from whence we could infer that he vould have gained a settlement there, had the place to which he so removed then been another town than Lancaster.
* This is probably an omission which might be supplied, . if necessary to the decision of the cause. But the decision, to which we have come makes it unnecessary to delay the cause for the introduction of any new facts.
The section of the statute of 1807, c. 48, which incorporates West Boylston, is supposed to be decisive as to the settlement of the paupers in that town. The substance of the provision is, that any person who may have gained an inhabitancy, at any time before the first Monday of March then next, within those parts of the several towns of which West Boylston was formed, shall be supported by that town.
Before the removal of Benjamin Glazier, he had the settlement of his father in Lancaster, he having lived in that town, and near the centre of it, from 1734 to 1747. To bring the paupers within the before-mentioned provision of the act, it must be shown that a less remote lineal ancestor than Joseph Glazier, their great-great-grandfather, gained a settlement, within the meaning of the act, in another part of the town. A settlement cannot be gained or lost by changing the domicile from one place to another in the same town *239 It is difficult to ascertain the precise meaning of the legislature in the section referred to. Probably, however, the intention was to make each of the towns which had been dismembered, as well as the new town, liable in the same manner they would respectively have been liable had they all existed before as separate towns. Tbps, where any person should stand in need of relief, and a dispute should arise to which town he was chargeable, the question would be, where did he gain his settlement ? or, if he had none in his own right, where did his ancestors gain theirs ? If in those parts of either of the towns of Holden, Sterling, or Boylston, which had become West Boylston, then he was to have his legal settlement in that town ; otherwise, not.
Did, then, Benjamin Glazier gain a settlement in the part of the town of Lancaster which has now become West Boylston1 He could not gain such settlement; because his * settlement was already in Lancaster, wherever he might have lived within that town. Living a year in a particular part of the town could give no settlement there, because there could be no warning out, and it was the living a year without being warned out which gave the settlement.
We have been referred to the case of Great Barrington vs. Lancaster, (2) as decisive of the case before us. But the facts there were different. • The pauper’s father, in that case, had acquired a new settlement in Shrewsbury, by the annexation of a part of Lancaster, within which he lived, to Shrewsbury. The same territory afterwards became Boylston; so that, by virtue of the several acts of incorporation, he was transferred from one to the other, until, finally, he became settled in West Boylston. In the present case, we see no way in which Benjamin, Glazier could have gained a settlement any where but in Lancaster; and his great-grandchildren must inherit his settlement.
A similar construction was given by the Court to the statute of 1804, c. 7, incorporating the town of Hinsdale. (3) And in the case of Sudbury vs. East Sudbury, which was decided by this Court in 1815, but which did not happen to be reported, the same construction was given to an agreement of the two towns, similar in its provisions to the legislative provision in the case before us. I have a manuscript report of that case, from which it appears that, on the separation of East Sudbury from Sudbury, an agreement was made between the two towns, “ that all paupers who had gained a settlement in the old town before the division should be supported in the town in which they gained their inhabitancy.” The pauper in *240 question was born within the limits of East Sudbury. The Court decided that he could not gain a settlement, by removing from one part of a town to another; and therefore he was fixed in East Sudbury.
The principle is the same in the case at bar. Benjamin Glazier had his settlement, under his father, in Lancaster. He did not acquire a new settlement by changing his residence within the town. His descendants therefore * continue to have their settlement in Lancaster; or, at least, have no legal settlement in West Boylston, which is all we are called upon to decide in this action. Judgment is to be entered for the defendants upon the verdict.

 14 Mass. 253.

 6 Mass. Rep. 501, Dalton vs. Hinsdale.