NEW-YORK,
May, 1808.

Overseers of
Washington
v.
Overseers of
Stanford.

The Overseers of the Poor of the town of Washington *against* the Overseers of the Poor of the town of Stanford.

Where a town is divided by an act of the legislature into two towns, and the poor are also directed to be divided between the two, those who afterwards become paupers, are to be considered as settled in the towns within which they were respectively born, and not where they happened to reside at the time of the division.

THIS cause came before the court on an appeal from an order of the general sessions of the peace of *Dutchess* county.

It appeared, that one *Huddlestone* and his wife and four infant children, were removed, as *paupers*, from the town of *Stanford* to the town of *Washington*, by an *order of two justices*, dated the 18th of *December*, 1806, which stated that the paupers had become chargeable to the town of *Stanford*, and had not gained any legal settlement therein, and they adjudged their legal settlement to be in the town of *Washington*. Previous to this order, the paupers had been removed to the town of *Stanford*, by an *order of two justices* of *Ulster* county, dated the 31st day of *October*, 1806, adjudging that to be the town from which they had last come, and that they had gained no settlement in the town of *Wawasink*, from which they were removed. From the last order there was no appeal made. The towns of *Washington* and *Stanford* were formerly one town, by the name of *Washington*. By an act of the 12th of *March*, 1793, the town of *Washington* was divided, and a part thereof erected into a new town, by the name of *Stanford*, and the poor of the former town were divided, according to the act, between *Washington* and *Stanford*. *Huddlestone* was born in *Washington*, before it was divided, and in that part of it included in the present town of *Washington*. At the time the town was divided, he *resided* in that part of it now called *Stanford*, but was not then chargeable.

On an appeal to the general sessions of the peace of *Dutchess* county from the first mentioned order, the court decided, that with respect to the settlement of the pauper,

NEW-YORK,
May, 1808.

Overseers of
Washington
. v.
Overseers of
Stanford.

the towns of *Washington* and *Stanford* must be considered as if they had always been separate, and that he must, therefore, be deemed chargeable to the town of *Washington*, having been born in that part of the old town now called *Washington*, and *the order was affirmed.*

Proof was offered to the sessions, that at the time of the division of the town, the supervisors and overseers of those two towns agreed, that each town should support all such persons as were then inhabitants of each town, and who should thereafter become chargeable, but this testimony was overruled.

From the judgment of affirmance, the overseers of the poor of *Washington* appealed to this court.

*Emott*, for the plaintiffs in error. The general law relative to the poor, does not apply to this case. The question is not the same, as if it arose between either of the two towns and a third town. It depends on the true construction of the act of 1793, for dividing the town of *Washington*, and erecting a part of it into a new town by the name of *Stanford*. The poor of the old town, that is, the paupers with which *Washington* was, before the division, chargeable, were directed to be divided, and each town was to maintain the poor residing within its limits respectively. Persons that afterwards became paupers would be provided for by the general law relative to the settlement of the poor. The agreement made between the supervisors of the two towns, shows that such was their construction of the act, and it ought to have been received in evidence. If this case does not, by this construction, come within the act of 1793, it must then be decided according to the common law, which knows of no *settlement* but by *residence*. The other modes of gaining a settlement are derived from the statutes.

*J. Tallmadge*, contra. The supervisors had no power to make any agreement relative to the poor, different from the provisions of the statute; nor can their agreement be binding on the town, or be evidence of the true construction of the act of 1793. The place of *birth*, is

always considered as the place of settlement, and when it was proved that *Huddlestone* was born within the present town of *Washington*, that was sufficient to fix his legal settlement there, unless the plaintiffs in error could show a derivative settlement elsewhere.

VAN NESS, J. The only question in the case is, whether the town of *Stanford*, in *Washington*, is chargeable with the maintenance of *John Huddlestone*, who became a pauper on the 18th of *December*, 1806? To determine this, it is necessary to inquire which of the towns is the last place of his legal settlement.

The town of *Washington* was divided in 1793, and that part of it which is now the town of *Stanford*, was erected into a separate town. The pauper was *born* in the territory now composing the present town of *Washington*, but at the time when the town of *Washington* was divided, under the act for the dividing the town of *Washington*, he *resided* in the territory which now composes the town of *Stanford*.

When a new town is erected, it immediately becomes entitled to all the benefits and advantages, and subject to all the duties and burthens common to other towns. Among the latter is the burthen of maintaining the poor. The provisions of the general law for the maintenance and relief of the poor attach on the new town, the moment it is erected. This being granted, it seems to me to put an end to the question now under consideration.

That birth gives a settlement is not to be disputed, as a general rule; indeed this is assumed as a fixed principle by our statute. *Huddlestone*, who became a *pauper* in 1806, was chargeable therefore to the town in which he was born, which is the present town of *Washington*, unless he has obtained a legal settlement elsewhere.

It is not pretended that he has gained such settlement, unless his residence within the bounds of the present town of *Stanford*, at the time of the passing of the act to divide the town of *Washington* in 1793, has had that effect. The act provides, that after a division of the poor, each town shall maintain its own poor, that is, after the division,

NEW-YORK,
May, 1808.

Overseers of
Washington
v.
Overseers of
Stanford.

these towns, in relation to the support of the poor as regulated and defined by the general poor laws, shall stand on the same footing as other towns.

It cannot be supposed that the legislature intended to introduce a new rule, in relation to the settlement of paupers, as between these towns. If such had been their intention, it would have been declared in express terms, and not have been left to mere implication.

There is another view of this question which appears to be conclusive. Suppose the pauper in 1806, had resided in the town of *Poughkeepsie*, and it had been necessary to remove him from thence to the town in which he had acquired a legal settlement, I think there can be no doubt, that the town of *Washington* would be considered as the town to which he was chargeable. In the case just supposed, the provisions of the general poor law certainly would have prevailed. If the construction given to the act of 1793 by the appellants' counsel, be correct, it would follow that, as between the towns of *Stanford* and *Washington*, there would be one rule regulating the settlement of paupers, but as between them and third towns there would be another and a different rule. In the first case, the residence of the party would determine the settlement; and in the other it would be determined by the birth. I am persuaded that this was never the intention of the legislature. The construction I have adopted will establish one general rule, in the operation of which there is nothing unequal or unjust.

The evidence offered respecting the agreement between the supervisors and overseers of the poor of the towns of *Washington* and *Stanford* was properly rejected by the sessions. That agreement, if made, was not obligatory, and can never controul the operation, or construction of a statute.

I am of opinion, therefore, that the order of sessions be affirmed.

SPENCER, J. The town of *Washington*, prior to 1793, composed the present towns of *Washington* and *Stanford*.

By an act of the 12th of *March*, in that year, the latter was erected into a new town ; the act dividing it, prescribed a method of equalising the poor of the original town, and it declared that thereafter the towns should maintain their respective poor. *John Huddlestone*, the pauper, was born in *Washington* prior to its division, and in that part of it which composes the present town of *Washington*, but at the time of the division, he resided in the present town of *Stanford*, and has generally since resided there, but was not chargeable, nor likely to become so.   Under these circumstances, which of the towns is bound to support him and his wife and children ?

In my opinion the town of *Washington* is bound to support them as paupers chargeable on that town.   After the separation of the town of *Washington*, and the division of the poor according to the act of 1793, with respect to all future paupers, they stood in the same situation in respect to each other, as any other towns in the state, and as though they had always been distinct towns ; the requisition of the statute, that after the division of the paupers, the towns should maintain their respective poor, never attached on *Stanford*, because *Huddlestone* had gained no settlement there, but it did attach on *Washington* in consequence of the birth of *Huddlestone* within its bounds.   Birth is not one of the means mentioned in the statute of acquiring a settlement, but the statute presupposes, that it gave settlement, and it has accordingly been holden that the town where a pauper is born is chargeable with his maintenance, until he acquires some other settlement.

The sessions very properly overruled the evidence of declarations made, when the poor were distributed ; the supervisors and overseers of the poor had no authority to make any agreement relative to future paupers ; and it would be extraordinary to receive it as evidence of their sense of the law.

In my opinion, the order of the sessions must be affirmed with costs.

KENT, Ch. J. Upon the division of a town, the poor are directed to be apportioned, not according to the place of birth, (for they might all happen to have been born in one division of the town,) but according to the last tax list. This was the case with the towns in question, and if *Huddlestone*, the principal pauper here, had been at that time a pauper, the place of his birth would have been immaterial as it respected the apportionment of the poor. The more reasonable construction of the law appears then to be, that each town took the responsibility of the maintenance of the inhabitants who fell within its new limits. Actual residence became equivalent to birth, in respect to the settlement of the inhabitants of these towns in relation to each other. The actual spot of the birth formed no rule of apportionment of the existing poor, and why should it, as to any of the then existing inhabitants? In the western and northern parts of the state, one part of a town may have been settled, principally, by emigrations from another part, and by the rule adopted in the court below, upon the separation of the new settlements into a distinct town, all their accruing paupers for many years would be returned upon the old town. The principle adopted by the act, which was not to regard the place of birth in the first distribution of the poor, ought to be carried throughout, and each town should be precluded from recurring back to the place of birth, in the case of actual residents at the time of separation. For these reasons, I am of opinion, that the order below ought to be reversed.

YATES, J. not having heard the argument in the cause, gave no opinion.

Order affirmed.