Paupers com-
ing    directly
from    another
state, do not
gain a settle-
ment,    merely
by a year's re-
sidence.    The
*second* section of
the act relative
to   the   poor,
(sess.   24.   c.
184.)    applies
onl,   to mari-
ners and other
persons coming
from some port
or place *out of
the United
States*, directly
into this state.

*The Overseers of the Poor of the town of* CHATHAM *against
the Overseers of the Poor of the town of* MIDDLEFIELD.

ON *certiorari* to the Court of General Sessions of the
Peace of *Otsego* county.    By the return, it appeared, that
*Mary Reynolds, alias Mary Olds,* was born and settled in
the town of *Great Barrington,* in the state of *Massachu-
setts;* and, in 1812, being of the age of twenty-two years, and
in good health, she came directly to the town of *Chatham,*
where she resided thirteen months, and continued in good
health.    She then went to reside in *Middlefield,* where she
had several bastard children, and continued to reside there,
until *December* 22d, 1818, when she was removed, with her
children, by the order of two Justices of the Peace, to *Chat-
ham,* as the place of her legal settlement.    On appeal to
the Court of Sessions, the order of the Justices was af-
firmed.

The case on the return was submitted to the Court, with-
out argument.

The question was, whether the pauper, by her former re-
sidence, during thirteen months, in *Chatham,* gained a legal
settlement there ?

The " act for the relief and settlement of the poor," pas-
sed the 8th of *April,* 1801, (1 *K. & R.* 566.) sess. 24. c.
184. s. 2. after defining what should give a settlement to
persons in general, declared, " that all mariners coming
into this state, and having no settlement in this state, or in
any of the *United States* of *America,* and every other healthy
able bodied person coming directly from some foreign port
or place into this state, shall be deemed and adjudged to be
legally settled in the city or town in which he or she shall
have first resided for the space of one year."(*a*)

(*a*) There is a *proviso* in the second section of the revised act of the
8th of *April,* 1813, (1 *N. R. L.* 279.) relative to persons coming into
the city of *New-York,* from any other state.

*Per Curiam.* We are clearly of opinion, that "*coming directly from some foreign port or place,*" means coming from some port or place *out of the United States,* without passing *through either of the sister states,* into this state.

The word "*directly,*" has otherwise no meaning. For it is impossible that a person could come into this state without coming "*directly*" from a foreign port or place, if the sister states are to be included in the words "*foreign port or place.*" Those words are here used in their popular sense. The legislature had in view imported paupers, or poor emigrants from *Europe,* and meant to discriminate between such as came directly to this state, and such as might first arrive in another state, and, afterwards, find their way here. It could not have been intended to adopt paupers coming from the other states, and allow them a settlement here, merely on a year's residence. There was no motive or reason for such a law. On the contrary, we find, that by the act of the 8th of *April,* 1808, (ch. 192.) and the act of the 5th of *April,* 1817, (ch. 177.) new and increased impediments are created against allowing a settlement to persons coming from the other states.

The order of the justices ought to have been for the removal of the paupers to *Great Barrington;* and the order of the sessions must, therefore, be *quashed.*

<div align="right">Order quashed.</div>