The Chief Justice delivered the opinion of the court as follows:
In the division of the county of Sussex, and the erection of the new county of Warren, the township of Hardwick was divided into three parts, one of which, retaining the ancient name, is in the county of Warren, the other two parts remain in the county of Sussex, and are called Green and Stillwater. In the acts passed for these purposes no provision was made relative to the maintenance or .settlement or division of tho poor. John Whims, one of the paupers now in question, was born in Ireland and emigrated to this country in the year 1811. He landed on .Staten Island, went thence to the city of Hew York, where lie remained four days; to Newburgh, and was there about two hours; to Goshen, where ho staid about six weeks; and thence went into the township of Hardwick, in .the county of Sussex. At different places in that township, some in the part now Green, others in what is now Still-water, sometimes during several months, sometimes more and at others less than a month, but in no instance a *full year, he lived for about three years. Having [*63 married a woman whose maiden settlement does not appear, he then rented a house and lived in it a full year and paid *80 his rent and tax, in what is now called the township of' Green. Where he resided when he became chargeable does not appear. Having become blind and unable to maintain, himself and family, he was received by the overseers of the poor of Hardwick and supported by them as a pauper. At' the time of the division of Hardwick, in the year 1824, he was living in that part of the township called Stillwater, having been, as it is called, farmed out there, by the overseers of Hardwick. From Stillwater he was sent by an order of removal to Green. On appeal to the sessions the order of removal was quashed.
The first subject of enquiry is, whether by the year’s residence the pauper obtained a settlement. Under the act of 1774 an healthy person coming directly from Europe into this state shall be legally settled in the township in which he shall first settle and reside for one year. The pauper, however, did not come into this state directly from Europe. He came here directly from the state of Hew York, and nearly two months after he landed. It would be a perversion of language and a denial of any signification or force to the word directly, to say the case is within that term of settlement. In Chatham v. Middlefield, 19 John. 56, the Supreme Court of Hew York, on the construction of their act, substantially similar to our own, said, “ The coming directly from some foreign port or place into this state ”' means coming from some port or place out of the United States, without passing through either of the sister states-into this state.
Ho actual settlement was acquired, then, by the pauper, in the old township of Hardwick.
But. it is said, the township and every part of it have admitted the pauper to have been settled by his residence in the part now called Green, having received and for a number of years provided for him as a pauper; in other words, that by these acts they are estopped from denying ■ the legality and validity of his settlement. These facts are,. *81 however, entirely too equivocal to produce such effect. It may be that the overseers supposed the residence gave him a settlement; but it is more probable that they maintained him, as they were bound to do, because they could find no place * whither they could legally send him. A fulfil- [*64 mont of their duty in this way ought never to conclude them on a question of settlement. Rex v. Chadderton, 2 East, 28; Rex v. Chatham, 8 East, 498.
By what rule then is the township to be charged with the maintenance of the pauper and his family now to bo ascertained ? From the principles adopted in -relation to the sustenance of the poor, and from analogy to the well settled rules of settlement cases, it is clear that he ought to be maintained by the new township in which he resided when he became chargeable. Whether this bo Green or Still-water, as 1“ have already observed, does not appear. If Green, the fact of his being farmed out in Stillwater at the division can produce no difference. He was then in the hands of the overseers, who might keep him where they found most convenient, anu under such circumstances the liability to his support would not undergo a change.
W e were referred by the counsel of one of the parties to the case of Washington v. Stanford, 3 John. 193. It is not, however, in point; nor are the essential facts like those before us; but the reasoning adopted and the principles laid down by the court sustain the rule we have stated. There the pauper was actually settled by birth in the township before the division; and the court held him to belong to the part of the township in which he was born, and not to the other part in which he resided at the time of the division; but'one of the judges said, “The provisions of the general law for the maintenance and relief of the poor attach on the new township the moment it is erected.” Another said, “ They ” [the two new townships] “ stood in the same situation in respect to each other as any other towns in the state, and as though they had always been dis *82 tinct towns.” On such principles the part where the pauper became chargeable would doubtless be obliged to maintain him until his necessities ceased or they could find a legal settlement elsewhere.
We are of opinion therefore, the paupers now in question are to be supported by the township in which they originally became chargeable. If the counsel know or can agree on that fact, judgment ought to be given accordingly. If not, the case should be sent back to the sessions in order that-the fact may be stated.