## THE OVERSEER OF FRANKLIN TOWNSHIP v. THE OVERSEER OF LEBANON TOWNSHIP.

1. Where part of the territory composing an old township is by act of the legislature formed into a new township, those persons who, at the time of separation, held a legal settlement in the old township and resided upon the territory so cut off, acquire, *ipso facto*, a legal settlement in the new township.

2. A residence of ten consecutive years in the same dwelling, begun while the dwelling-place is in one township and ended after it has been comprised by act of the legislature within the limits of another township, will confer a legal settlement in the latter township, by force of the statute of April 6th, 1886.  *Rev. Sup.*, *p.* 800.

On *certiorari* to Hunterdon Quarter Sessions.

Argued at June Term, 1888, before Justices DEPUE, VAN SYCKEL and DIXON.

For the plaintiff in *certiorari*, R. S. Kuhl.

For the defendant in *certiorari*, J. H. Nunn.

The opinion of the court was delivered by

DIXON, J.   This case requires a decision as to the place of legal settlement of a pauper.   The facts admitted are that

the pauper's father was legally settled in the township of Franklin, Hunterdon county, prior to 1859 ; that in 1859 he began to reside in a rented house in that township, and that he continued to reside in the same house until 1870 ; that in 1865 (see *Pamph. L., p.* 778) that portion of Franklin town-ship in which the house was situated was severed from Frank-lin township and, with other territory, erected into a new borough or town corporate, called " The Town of Clinton." The question now raised is whether the father shall be con-sidered as settled in the present township of Franklin or in the town of Clinton, it being conceded that the father's set-tlement is also that of the pauper by derivation.

We think that the settlement should be deemed to be in Clinton, upon either of two grounds.

*First.* When part of the territory composing an old town-ship is by act of the legislature formed into a new township, those persons who, at the time of separation, had a legal set-tlement in the old township and resided upon the territory so cut off, acquire, *ipso facto*, a legal settlement in the new town-ship. This doctrine seems to flow from what may reasonably be presumed to have been the object of the legislature in cre-ating the new township, viz., that instead of the public rela-tions previously existing between the inhabitants and the old township, there should be substituted similar relations between them and the new township. This rule was adopted by statute in Massachusetts as early as 1793, but the courts of that state deemed it a principle of the common law deducible from the nature of corporate rights and duties. *Windham* v. *Portland,* 4 *Mass.* 384, 390 ; *Salem* v. *Hamilton, Id.* 676, 678 ; *Great Barrington* v. *Lancaster,* 14 *Id.* 253, 256 ; *Sutton* v. *Orange,* 6 *Metc.* 484, 486. In the case last cited, Chief Justice Shaw speaks of the statute as " little more than an authoritative declaration of rules which had been before established as the rules by which persons had been held to acquire settlements."

In *Washington* v. *Stanford,* 3 *Johns.* 193, the rule above stated was not maintained, two judges of the Supreme Court of New York holding that, upon the division of a town, the

legal settlement of a person, born in one portion and then residing in the other, was in that portion where he was born; but the principle adopted in Massachusetts received the approval of Chief Justice Kent.

The cases in New Jersey are scarcely significant. There are only two in which the division of a town was a circumstance involved. In *Stillwater* v. *Green,* 4 *Halst.* 59, the pauper had no legal settlement, but had become chargeable upon the old township by residence there before the division. The court held that upon division of the old township into three new townships the pauper was to be supported by that new township in whose territory he resided at the time he became chargeable. In *Bethlehem* v. *Alexandria,* 3 *Vroom* 66, the pauper had, prior to 1856, acquired a legal settlement by the ownership of and residence upon a freehold estate in Alexandria; in 1856, while living outside of Alexandria, he had become a public charge, and was thereupon, by the order of two justices, removed to Alexandria for maintenance as a pauper. Alexandria continued so to maintain him until 1859, when that part of the township in which was the land formerly owned by the pauper was set off to Bethlehem. The court held that he thereupon became chargeable to Bethlehem, although he was then dwelling in the territory remaining to Alexandria. This case stands outside of the principle now under consideration, for the reason that, although the pauper was within the township at the time of division, yet he was there as a pauper maintained at public expense, and not as an independent resident, and his last place of voluntary residence had been in another township, and hence he should be deemed a non-resident at the time of division. The principle in question applies only to *bona fide* residents.

The *second* ground upon which the present pauper's settlement in Clinton may be sustained is the statute of April 6th, 1886 (*Rev. Sup., p.* 800), amended in 1887 (*Pamph. L., p.* 180), which enacts " that any person or persons who have or who shall have last resided in any township of this state for

the period of ten consecutive years shall be considered as legally settled in said township."

This statute is retrospective (*Marlborough* v. *Freehold*, 21 *Vroom* 509; *Woodbridge* v. *Amboy, Coxe* 246 (213), and therefore includes cases in which the stated period of residence had been completed before the act was passed and those in which it was then running, as well as those in which it should thereafter begin. The only doubt suggested with regard to the applicability of the statute to the present case arises from the fact that the period began while the place of residence was under the government of the old township, and was finished after that place had been transferred to the new one. But we think this fact is unimportant. The object of the enactment is that a residence for ten consecutive years within the territory embraced in any township shall confer a legal settlement in that township. As was said by Mr. Justice Haines, in 3 *Vroom* 69, " the settlement of a pauper is in its nature local. The place   *   *   *   fixes the settlement, and by reason of it the township which includes that place is chargeable with his maintenance." It is an ordinary use of language to say that a person has resided ten years in a township, although during that period the place of his residence has by legislation been transferred from one township to another. Thus our constitution makes one of the qualifications of voters a residence in the county for five months next before the election, and the statutes have ever since required such a qualification of those voting at town meetings. *Rev.* "*Townships,*" §§ 5, 31. In this state of the law the new counties of Ocean (*Pamph. L.* 1850, *p.* 73) and Union (*Pamph. L.* 1857, *p.* 244) were created, and their inhabitants held town meetings within five months after their creation; yet no question was ever suggested about the right of these inhabitants to vote at those meetings, on the ground that they had not resided in the county for five months preceding; if they had resided in the territory, out of which the new county was formed, during the preceding five months, they were considered to possess the qualification required. So, from 1798 (*Pat. Laws, p.* 283, § 5) until 1850, a residence of

several months in the township was demanded as a qualification for voting at town meetings; but in the numerous townships organized during that period, the same construction doubtless universally prevailed.

Our conclusion is that the pauper's legal settlement is in Clinton, and that the order for charging the township of Franklin should be reversed, with costs.