The opinion of the Court was afterwards delivered by
Parsons, C. J.
We are to decide, upon the facts stated, whether the settlement of Matthew Tobin, the pauper, be or be not in Portland.
The pauper came to Falmouth in 1754, and dwelt there until 1761, without being warned to remove from that town. He, therefore, had a legal settlement in that town. He afterwards removed to Penobscot, where he lived until 1776; but Penobscot being a plantation unincorporated, he did not lose his settlement in Falmouth. In 1776, he removed to Windham, and has lived there ever since, except the years 1783 and 1784, when he was absent at Penobscot. And the defendants have argued that he gained a settlement in Windham.
* By the statute of 1789, c. 14, passed on the 23d of [ * 387 ] June in that year, every citizen, who shall be seised of an estate of freehold in any town of the clear annual income of three pounds, and shall reside thereon, or live within the said town, occupying and improving the same in person, for the space of two whole years, shall gain a settlement in that town. And the case states that in 1787 the pauper married a Mrs. Winship, who is still living, and who was, and still is, entitled to dower in a house and forty acres of land in Windham, the clear yearly income of one third of which is 11 dollars; and that the pauper and his wife entered on twenty acres, part of the land, in 1788, and actually improved the same for more than two whole years from that time. But. it is not stated that her dower had been assigned to her.
If the wife had a freehold, the husband must have been seised, not in his own, but in her right. And the plaintiffs deny that a freehold, holden by the pauper in right of his wife, is such a freehold as is within the statute. On considering this point, we are satisfied that a freehold in right of the wife is within the statute. The husband is, in fact, seised of it, and is entitled to all the rents *340 and profits; and the statute does not require that the freehold should be holden by the pauper in his own right.
The constitution, describing the freehold qualifications of a governor, senator, or representative, declares that the freehold must be holden in his own right. But in describing the freehold qualifications of an elector, the restriction confining it to his own right is omitted; and a citizen, having, in right of his wife, a freehold of the annual value of three pounds, is a qualified voter.
Comparing the freehold qualifications of an elector with the freehold of a citizen, by which he may gain a settlement, we are satisfied that no distinction is made; and that every citizen having a freehold qualification as an elector, and personally occupying it for two successive years, may gain a settlement.
The plaintiffs further object that, from the facts stated, the wife had no freehold in the land occupied, although she was entitled to dower. This objection, we think, is well supported. [ * 388 ] * A widow, having a right of dower, cannot lawfully enter after her husband’s death, until an assignment be made by the heir, or other tenant of the freehold, or in a course of legal proceedings. When the assignment is made, she acquires no new freehold, but is in by her husband, her seisin being deemed in law to be a continuation of her husband’s seisin. As the entry of the husband and wife is not stated to'be a disseisin of the tenant of the freehold, they must be considered as holding at his will, and not as having a freehold estate in her right. There seems to be here another defect in the statement. For although it be agreed that the yearly income of one third of the house and land was 11 dollars, yet the yearly income of the twenty acres occupied by the wife might be much less.
Another ground has been taken by the defendants, to show that the settlement of the pauper was in Windham. The statute of 1789 provides that, if a citizen, after the age of twenty-one years, shall reside and pay a town tax in any town for the space of five years successively, he shall gain a settlement in that town. And the case states that the pauper resided in Windham, and paid town taxes there for the year 1789, and for four successive years after. The statute of 1789 was repealed by the statute of 1793, c. 34, passed February 11, 1794. This last statute enacts that all settlements then gained should remain, until lost by acquiring other settlements pursuant to the provisions there directed. If a settlement had been gained under the statute of 1789, before its repeal, the objection of the defendants must have prevailed. This statute requires, not only a payment of town taxes in any town for five successive years, but a residence for that time in the town. The statute of 1789, passed *341 June 23d in that year, and it was repealed February 11th, 1794, not having been in force five years. The pauper could not, therefore, reside in Windham under that statute five years successively; and this objection of the defendants must fail. And upon the whole case, sufficient does not appear to show that the pauper was ever settled in Windham.
The plaintiffs, to maintain their action, must also establish the pauper’s settlement in Portland. Portland was formerly * a part of Falmouth, and was incorporated by statute [ * 389 ] 1786, c. 14, and the pauper, when, he had his settlement in Falmouth, resided in that part of. it since included in the limits of Portland. Hence the plaintiffs infer that the settlement of the pauper is in Portland. If the legality of this inference depended upon the construction of the statute of 1793, the plaintiffs must recover. By this statute, it is enacted that upon the division of towns or districts, every person having a legal settlement therein, but being removed therefrom at the time of the division, and not naving gained a settlement elsewhere, shall have his settlement in that town or district, wherein his former dwelling-place or home shall happen to fall upon such division. But this provision relates only to divisions made after the passing of the act. Portland was incorporated before the passing of this act; and the question in this case must be decided according to the laws in force at that time.
A town incorporated may acquire property, real or personal; it enjoys corporate rights and privileges, and is subject to obligations and duties. If a part of its territory and inhabitants are separated from it, by annexation to another, or by the erection of a new corporation, the former corporation still retains all its property, powers, rights, and privileges, and remains subject to all its obligations and duties, unless some new provision should be made by the act authorizing the separation. Thus it would continue seised of all its lands, possessed of all its personal property, entitled to all its rights of action, bound by all its contracts, and subject to all its duties. Any person having a settlement in the town by residence, or in any other manner, on whatever part of its territory he might have dwelt, when a pauper, has a claim upon it for relief; and although the pauper may not enforce his claim by action, yet if relief be refused by the town, and supplied by the humanity of others, the town may be compelled to refund the value of the supplies, in an action instituted for this purpose. A town, therefore, is justly considered as under a legal obligation to support every person having a settlement there, when he shall be poor and stand in need of relief, having no relatives obliged to maintain him And by a * separation of a.part of its territory and [ * 390 ] *342 inhabitants, by annexation or a new incorporation, this obligation remains unaltered.
But as this separation must be made by the legislature, the act authorizing it may impose conditions or limitations, to relieve the town which is so to be deprived of a part of its territory or inhabitants ; and provisions of this nature are very frequently, although not always, introduced into acts incorporating a new town, composed of the fragments of one or more old towns. But if no legislative provision be made, the settlement of any person in the old town is not affected by the new incorporation, unless at the time of the incorporation he shall dwell within the limits of it, and as a party to it acquire a new settlement in the new town.
This principle, thus deduced from the nature of corporate rights and duties, has been frequently recognized by the legislature, when passing acts incorporating new towns out of one or more old towns. We refer to the acts incorporating Newburyport, [3 and 4 G. 3, c. 9,] Cohasset, [10 G. 3, c. 7,] West Springfield, [14 G. 3, c. 12,] Ludlow [14 G. 3, c. 1,] Milford, [1780, April 11,] Westport, [1787, c. 9,] Freeport, [1788, c. 62,] Russell, [1791, c. 39,] and other towns; and also to the act incorporating the defendants. The provision in this last act is that, if any person or persons heretofore belonging to the town of Falmouth, and who have removed from thence, shall be returned thither again, and become a public charge, the same shall be paid by the two towns aforesaid, in proportion to the tax laid on them severally from time to time. Now, a pauper cannot be returned to any town, but to that in which he has a settlement; and this act contemplates that all persons having a settlement in Fal mouth, and then removed therefrom, may be returned thither again; and relief is given to Falmouth, by enabling it- to- charge Portland with a proportion of the expenses.
It is, therefore, very clear, upon the whole state of the case, that the pauper, Tobin, has not his settlement in Portland, nor in Wind-ham, but in Falmouth, and the plaintiffs cannot maintain their action.. Falmouth should have been sued as the place of the pauper’s legal-settlement; which town might have called on Portland for con tribution.
[ * 391 ] * In this respect, the law is now altered, by the statute of 1793, as to incorporations made after that time ; and the mistake in bringing the action might have arisen from the considering that statute as in that case an affirmance of the existing law.