Union Baptist
Society
*vs.*
The town of
Candia.

—»●●●«—

## UNION BAPTIST SOCIETY *vs.* THE TOWN OF CANDIA.

2 20
70 488

The title and disposition of property, given for pious uses, is not regulated by any statute of this State.

After a grant of land to a town for the use of the ministry, if the town be divided, and such land fall within the boundaries of the new town, the title to the land still remains in the old town.

Where the new town attempted to sell such land, and actually received the consideration, the new town was held not to be liable for any portion of it to a religious society incorporated within its boundaries.

THIS was assumpsit for money had and received. The cause was tried here, on the general issue, September Term, 1818 ; and a verdict taken for the defendants, subject to the opinion of the court on the following facts.

The town of Chester was incorporated in A. D. 1722 ; and in A. D. 1739, the proprietors of it surveyed and gave to the town, for the use of the ministry, lot No. 90, in the 4th range.

In A. D. 1763, a portion of Chester, including the above lot, was incorporated into a separate town, by the name of Candia. In October, A. D. 1815, Candia voted to sell this lot at public auction ; and the committee, appointed to effect the sale, executed leases of the lot, in December, 1815, for 999 years, and received therefor the sum of $4,289. Objections arose concerning the mode of payment, &c., which it is unnecessary to state.

In June, 1816, the plaintiffs were incorporated and worshipped in the town of Candia ; though the validity of their charter was questioned, on grounds which, considering the opinion of the court on other points, need not be detailed.

After the society had organized under their charter, they petitioned Candia for a portion of the interest, which had accrued on the consideration received for the lot ; but, in November, 1816, the town refused the prayer of the petition.

*Sullivan* and *J. Smith*, counsel for the plaintiffs.

*Mason*, for the defendants.

WOODBURY, J. The 4th, 5th, and 6th articles in our Bill of Rights, make ample provision for liberty of conscience.(1)

(1) 1 N. H.
Laws, I.

But freedom of belief and of worship in religion is one thing; the rights of property are another, and are totally distinct.

In Massachusetts and Vermont, express statutes have been enacted on the subject of property dedicated to pious uses. 9 *Cranch* 335, *Pawlet vs. Clark et al.*—*Colonial Charters* 606. —5 *Mass. Rep.* 554.—14 *ditto* 338.

In this state, however, neither the constitution nor statutes have attempted to regulate the remedies, the titles, or the income of such property ; and consequently all donations of it, whether to ministers, churches, parishes, or towns, must be governed by the established principles of the common law.(1)

(1) 9 Cranch, 333, 334.

At the same time we wish it distinctly understood, that if those principles are in any case clearly inapplicable to our state of society and our political institutions, we shall not hesitate to disregard them ; and, on the subject of religion, none feel more earnestly disposed than ourselves to enforce the sacred injunction of the constitution, that " every de-" nomination of christians, demeaning themselves quietly and " as good subjects of the state, shall be *equally* under the pro-" tection of the law." (1 *New-Hampshire Laws*, 2.)

But the facts in this case do not raise the important questions, contemplated by the plaintiffs, whether a town, as a civil corporation, has the sole right; or whether each individual, each settled minister, each religious society, or each religious incorporation in a town, has a proportionate right to property given " for the use of the ministry."

Because the lot No. 90, was granted to Chester, and not to Candia ; and whether, by the grant, there vested in Chester an absolute fee, a base fee determinable on the settlement of a minister, a trust for each theological association, or any other imaginable interest, is of no consequence to the plaintiffs.

The plaintiffs are incorporated in Candia, not in Chester ; Candia is now sued ;—and yet it is apparent, that when Candia was formed from Chester, though this lot fell within its boundaries, it was not conveyed to that town, either in its charter of incorporation, or by any vote of Chester. The title to it, therefore, like the title to all other land with-

in its limits, remained unchanged ; and the town acquired over that, as over other land, only a corporate jurisdiction. 10 *Mass. Rep.* 342, 94 *Semb.* 7 *Mass. Rep.* 445.

It is questionable, whether the trust would not have been violated, by an attempt to pass the title to Candia.\* True it is, that Candia has since proceeded to sell this lot : but upon these facts, the sale could pass no title to the purchasers, and upon the covenants or otherwise, the town is liable to refund to them whatever has been received.

Nor is Candia estopped to deny its title to this lot in an action with the present plaintiffs, whatever might be the case in an action with parties or privies to the sale. *Com. Di. " Estoppel"* C.—*Co. Litt.* 352a. 2 *D. & E.* 169, *Fairtitle vs. Gilbert et. al.*

Whether Candia may not have exercised an adverse possession over this lot more than twenty years ; and, whether such possession would bar the title of a public corporation, like Chester, or of other claimants not then perhaps *in esse*, are questions, which do not arise on the present testimony.

*Judgment on the verdict.*