SCHOOL DISTRICT No. 6 IN DANVERS *vs.* GILBERT TAPLEY.

When a town forms new school districts, by abolishing the old ones, the legal title to the existing school-houses vests in those of the new districts within whose territory they happen to fall.

TORT for breaking and entering the plaintiff's close, and taking and carrying away a school-house. The defendant justified under authority from School District No. 7. The facts, which were agreed, sufficiently appear in the opinion of the court.

*G. F. Choate,* for the defendant, cited *Windham* v. *Portland,* 4 Mass. 384 ; *Richards* v. *Daggett,* Ib. 534 ; *Brunswick* v. *Dunning,* 7 Mass. 445 ; *Minot* v. *Curtis,* Ib. 441 ; *Hampshire* v. *Franklin,* 16 Mass. 76–86 ; *Whittier* v. *Sanborn,* 38 Maine, 32 ; *Tozier* v. *School Dist. in Keima,* 39 Maine, 556 ; *Stoneham* v. *Richardson,* 23 Pick. 62 ; *Allen* v. *Westport,* 15 Pick. 35 ; *Whitmore* v *Hogan,* 22 Maine, 564.

*S. B. Ives, Jr., & J. B. Peabody,* for the plaintiffs.

HOAR, J. The court are of opinion that this case is settled by the decision in the case of *School District No. 1 in Stoneham* v. *Richardson,* 23 Pick. 62. It was there held that, " whenever a town forms new districts, by abolishing the old ones, the legal title to the existing school-houses vests in those of the new dis tricts within whose territory they happen to fall " ; and precisely this, we think, was done by the town of Danvers after the division of the town.

Before the division, there were fourteen school districts in the town, numbered consecutively from one to fourteen. By the creation of the new town, five of these districts, namely, Nos. 1, 7, 8, 9, and 11, with the larger part of three others, Nos. 6, 10, and 12, were transferred to South Danvers, leaving in Danvers but six entire districts and parts of three others.

At the next annual meeting, there was an article in the warrant " to see if the town will alter the numbers and limits of the school districts, or either of them." This article would seem to be sufficient to authorize any change in the districts which the town might determine. This article was referred to a committee consisting of one member from each school district, who made a report to the town, which was accepted, and its recommendations were adopted. By that report these results were effected. The whole number of districts in the town was reduced to seven, which were numbered from one to seven consecutively. Nos. 3, 4, and 13 were unaltered, except that No. 13 was to be called No. 1. No 2 was formed by adding to the former No. 2 all that remained of No. 12. A part of No. 5 was taken from it; and all that remained of No. 10 was added to the remainder, to make the new No. 5. No. 6 was composed of all that remained of the old No. 6, with the addition of a part of what had been No. 14, including the school-house in controversy. The remainder of No. 14, with what had been taken from No. 5, constituted the new No. 7.

Upon this state of facts, the position assumed by the defendant is this, that the new No. 7 was the identical corporation which had previously been known as No. 14, and that it retained its original rights of property. But we can hardly see in what this identity can be held to consist, or why it should be held to attach to that part of the original No. 14, which went to make up the new No. 7, rather than to that which became a part of the new No. 6. The old No. 14 had lost a considerable portion of its territory, including its school-house; it had received an accession of new territory; and it had changed its name. All that can be said in favor of its continuing the same is, that it retained the greater number of scholars, and, as we

suppose, though it does not distinctly appear from the statement of facts, the larger portion of its original territory. Perhaps to this should be added, that in the report of the committee this change is spoken of as an alteration of No. 14.

But we think the changes in the districts were so numerous and important, that, taken in connection with the fact that the whole number in the town was changed, and that every district is in turn mentioned, either by establishing new boundaries or adopting those of a district previously defined, it must be considered as a new districting of the whole town.

Whether the *dictum* in the opinion in *Stoneham* v. *Richardson*, 23 Pick. 68, that in the case of a mere alteration of the extent of the districts, " as the identity of the corporations would remain, it would seem that the property would not be devested although the school-house, by the newly-assigned limits, might fall without the territory of the district, and thus be rendered useless for the purpose for which it was made," can be supported upon sound principles, it is therefore unnecessary to determine in order to decide this case. It is at least questionable whether the better practical rule in all cases would not be, to regard this species of property in towns as strictly local in its character and uses, and as vesting in the district in which, upon any new division, it might chance to fall.

According to the agreement of the parties, the defendant must be defaulted, and the case stand for assessment of damages.