<hr />

HEIZER *v.* YOHN ET AL.

SCHOOL PROPERTY.—*Part of School Township and School Property Annexed to City.—Title to Property.*—Where real estate is purchased and buildings erected for school purposes, by the trustees of a school township, with the proceeds of a special school tax, and subsequently the territory embracing such property is annexed to a city, leaving more than half the school township outside the city limits, the title to the school lots and buildings still remains in the trustees of the school township, and the property may be sold by them. If an equitable division of the proceeds can be made afterward between the school trustees of the township and the city; *Query*, whether the Supreme Court will interfere to prevent such adjustment.

APPEAL from the Marion Circuit Court.

DOWNEY, J.—The appellees, trustees of common schools of the city of Indianapolis, sued the appellant, trustee of Center township, Marion county, alleging that said township purchased, with the funds of the common schools of the State of Indiana, certain real estate which was set apart and used for school purposes, and on which, as we infer, school-houses are situated; that this property was purchased prior to December 20th, 1869, and until that date was not within the corporate limits of said city; that on that day the city

Heizer *v.* Yohn *et al.*

council annexed certain contiguous territory to said city, and thereby took within its limits the said real estate. Plaintiffs are advised that they have a right to control said real estate; but the defendant, as such trustee, asserts title to and claims the right to possess and control the same, has advertised the same for sale, and threatens to sell the same, and divert it from school purposes in the city, and by said proceeding will cause the plaintiffs' title to be clouded, and destroy their right to the possession and control of the same. Prayer for a temporary injunction, and that on the hearing the title and right of possession of the property may be adjudged in the school trustees of the city, and that the defendant be perpetually enjoined, etc.

The defendant answered, first, the general denial, which was afterward withdrawn; and, second, that it was not true that the said property, or any part of it was purchased with the funds of the common schools of the State, but was purchased and the school-houses built thereon by the trustees of said township, with the proceeds of the special school revenue of the township; that the houses are good and centrally located in the districts which they were intended to supply; that more than half of each of the districts is outside of the city and under the control of the *township trustee*; that said school-houses are not centrally located for any ward in the city, or for the territory of said districts outside of the city, etc.

There is no direct allegation, either in the complaint or in the answer, of the manner of vesting the title to the property when it was purchased by the township; but we assume that it was vested in the township as required by law.

There was a demurrer by the plaintiffs to the answer, on the ground that it did not state facts sufficient to constitute a defence, which was sustained by the court; and judgment was thereupon rendered for the plaintiffs, as prayed for in the complaint. The defendant appealed to this court, and has assigned as error the sustaining of the demurrer to the answer.

It is provided by statute, that "the title of all lands acquired for school-house purposes, shall be conveyed to the school township, in the corporate name of the township in which the same is situate, except in incorporated towns and cities, and in that case, it shall be in the corporate name of such towns or cities in which the same is situate, for the use of schools therein." 1 G. & H. 570, sec. 2. The first section of this act makes the school township identical with the civil township in boundaries, but not in name exactly. The third section of the act provides that, "in all cases where the title to such lands is vested in any other person or corporation than provided in the preceding section, it shall be the duty of the school trustees of the township, town or city in which the same is situate, to procure the title of such land to be vested as provided in the second section of this act." There is no statute which provides that when part of a township shall be annexed to a city or town, the title to the school-houses, or houses and lots on which they are situated, within the territory thus annexed, shall, by that act, be withdrawn from the school township, as a corporation, and vested in the town or city. There is nothing in reason to support such a theory. It is contrary to all our received and recognized notions concerning the vesting and transferring of the title to real estate. And, as it is unsupported by reason, so, we think, in this case, at least, it is destitute of equity. The money with which the property was purchased and the houses erected was raised by a tax upon the people of the township, and more than half of those for whose use the property was acquired are still outside of the city. If the property shall be adjudged to belong to the city, these persons must lose what they have thus paid. On the other hand, if the property shall be declared to belong to the township, it is only adjudging that the title remains where it was vested, and that those who have become an integral part of another and distinct corporation, have ceased thereby to have any interest in it. It is true that equality, which is

equity, would say that they should share in the property, or its proceeds, in proportion to their numbers or the amount contributed by them to its acquisition.

In *The Inhabitants of School District No.* 1 *in Stoneham* v. *Richardson,* 23 Pick. 62, this subject was considered by the Supreme Court of Massachusetts, and this language is used: "In new districting towns it may happen that more than one school-house will fall within the limits of some districts, while others are left without any. So also the mere alteration of the extent of the districts may produce the same result. In the latter case, as the identity of the corporations would remain, it would seem that the property would not be divested, although the school-house, by the newly assigned limits, might fall without the territory of the district and thus be rendered useless for the purpose for which it was made."

In *School District No.* 6 *in Danvers* v. *Tapley,* 1 Allen, 49, it was held, that "when a town forms new school districts by abolishing the old ones, the legal title to the existing school-houses vests in those of the new districts within whose territory they happen to fall." This was a case, however, where the corporation which before held the title was entirely extinguished. In this case, the learned judge who delivered the opinion speaks of the language of the court in the case in 23 Pick., *supra,* as a *dictum,* and questions its correctness.

In *Whittier* v. *Sanborn,* 38 Maine, 32, the case in Pickering is followed, and it was there held by the court, that the alteration by the town of the lines of a school district, whereby its school-house is left within the limits of another district, will not defeat or affect its right of property therein. It may be remarked, that in the case in 23 Pickering and that in 38 Maine, the school-houses were situated on hired land, and the title to the land, and consequently to the houses built on it, was not vested in the old district as it is here vested in the township.

In *Briggs* v. *School District No.* 1 *of the Town of Erin Prairie,* 21 Wis. 348, it was held, that when territory

was detached from a school district, and erected into a new district, the old district was alone liable for the debts of the district prior to the separation.

And in the *Township of Saginaw* v. *School District No.* 1 *of the City of Saginaw,* 9 Mich. 541, the statement of facts and opinion of the court are as follows: "School District No. 1 of the township of Saginaw was organized in 1837. In 1857 the city of Saginaw was incorporated, the city limits being wholly within the school district, and comprising about one-fourth of the district. A mill tax for schools had been levied and collected in the district the preceding year, and paid over to the township treasurer, which the present action was brought to recover, by the defendant in error, who was plaintiff in the court below. After the incorporation of the city, the officers of the district assumed to act as the officers of School District No. 1 of the city of Saginaw, for that part of the district comprised within the city limits, and to change the name of the district from School District No. 1 of the township of Saginaw, to School District No. 1 of the City of Saginaw. The city charter provides for the election of two school inspectors for the city, and also makes the recorder of the city *ex officio* a school inspector, thereby clearly indicating an intention to sever the city from School District No. 1 of the township of Saginaw; and such we think was its effect. We are also of opinion that while the charter took from the district a part of its territory, it in no other respect deprived it of any of its legal rights, which remain the same after as before. And that however equitable it may be that the city should have its proportion of the mill tax, or other property belonging to the district when the severance took place, we know of no law giving it to the city, or under which it can be claimed by the city as a legal right. Provision is made by statute for such cases when a school district is divided, or a part of one school district is set off to another, by a board of school inspectors, but the case does not come within the law. The question on the trial was one of law for the

court to decide, and not of fact for the jury. The judgment must be reversed, with costs."

We are referred by counsel for the appellees to the case of *Carson* v. *The State*, 27 Ind. 465, and it is insisted that that case is decisive of the point involved here. But we do not think so. In the opinion in that case the learned judge says: "The main question involved in the case at bar is, did the town of Hanover, when it became incorporated under the general law, succeed to the rights of the civil township in which it is situated, in the management and control of the public schools within its territorial limits?"

If this was the main question in the case, then there was no question involved as between the school township and the town of Hanover. The civil township and the school township, though they have the same limits, are not the same corporation. 1 G. & H. 637, sec. 4, and 1 G. & H. 570, *supra*. And if the controversy in that case related to "the management and control of the public schools" only, it would seem that no question was involved covering the title to property. It is further said in that opinion that "under the constitution and laws of this State, school property is held in trust for school purposes by the persons or corporations authorized for the time being by *statute to con-*trol the same. It is in the power of the legislature, at any time, to change the trustee." Now whatever may have been the question in that case, in the one under consideration it is not a question with relation to the change of trustee merely, but it is a change of the *cestui que trust*, or beneficiaries, or the majority of them, which is claimed.

If that case was intended merely to decide that the legislature might at any time change the trustee, then it is not in point here.

Governed by the general principles of law, in the light of the authorities to which we have referred, we have arrived at the conclusion that the legal title to the school-houses and grounds in question remains in the school township of Center, and that the defendant was improperly enjoined from

selling the same. If there shall be discovered any ground on which an equitable division of the proceeds of the property, when sold, can be effected; or if the corporations interested can agree upon such division, this opinion is not intended to prevent such an adjustment.

The judgment is reversed, with costs, and the cause remanded.

*L. Barbour* and *C. P. Jacobs,* for appellant.

*J. S. Harvey,* for appellees.