CITY OF WINONA *vs.* SCHOOL-DISTRICT, No. 82, WINONA COUNTY.

January 11, 1889.

**Winona—Extent of School System—Enlargement of City Limits.—** Sp. Laws 1878, *c.* 155, entitled "An act for the establishment of public schools in the city of Winona," established a school system, not for the territory then within the city limits, but for the city of Winona, whether enlarged or diminished in area by future legislation. Hence that part of the territory of the defendant school-district which was annexed to the city by Sp. Laws 1887, *c.* 5, became a part of it for school as well as other municipal purposes, and ceased to be a part of defendant.

**Constitution—Title of Law.—**The act of 1887, referred to, is not repugnant to section 27, art. 4, of the constitution of the state because the matter of the change in the boundaries of school-districts is not mentioned in the title.

**Municipal Corporation—Change of Territorial Limits—Liabilities and Property Rights.—**If a part of a territory of a municipal corporation is separated from it by annexation to another, or by its erection into a new corporation, unless some other provision is made in the act authorizing the separation, the old corporation (it not having been abolished) remains subject to all its liabilities, and retains all its property, including that which, upon the change of boundaries, happens to fall within the limits of the other corporation.

Plaintiff brought this action in the district court for Winona county, to recover possession of a school-house and site. The action was submitted, upon stipulated facts, before *Start,* J., without a jury, and

judgment ordered for defendant. From this judgment the plaintiff appeals.

*H. L. Buck* and *W. A. Finkelnburg,* for appellant.

*J. W. Dyckson* and *Gould & Snow,* for respondent.

MITCHELL, J. The defendant, a duly-organized public school-district, acquired and held for school purposes a school-house and site. In February, 1887, an act was passed entitled "An act to amend the charter of the city of Winona," (Sp. Laws 1887, *c. 5,*) which extended the limits of the city so as to include a part of the defendant district, embracing the school-house in question. This act contained no express provision changing the limits of the school-district, and none as to the disposition of this school property. The question now is to which—plaintiff or defendant—does the school-house belong?

The first question that arises is whether the annexed territory remains a part of the defendant district, or has become a part of the city of Winona for school as well as for other municipal purposes. By chapter 155, Sp. Laws 1878, "An act for the establishment and regulation of the public schools in the city of Winona," and the acts amendatory thereof, it was provided that the territory within the corporate limits of the city of Winona shall constitute one school-district for the regulation and management of the public schools in said city, to be under the direction and control of a board, whose members are to be elected at the charter election, two for each ward, and one for the city at large, to constitute the "board of education of the city of Winona." The city council must approve and ratify every contract made by the board for the purchase of any site for a school-house. The board has to submit to the city council annually an estimate of the amount of money necessary to defray the expenses of the schools, which is subject to their approval; and, to raise the amount as thus approved, the council levies a tax on all the property in the city, which is collected in the same manner as other city taxes, and the money paid over to the city treasurer. The title to all school property is to be taken in the name of the city; and, when sold, deeds are to be made in its name as grantor, and signed by the mayor, and countersigned by the city recorder. These and other provisions of the act which might be referred to, show beyond all

doubt that its purpose was to adopt a policy, and not a mere arbitrary geographical line, and that this policy was to establish a uniform school system, not for the territory then happening to be within the city, but for the city, whatever its area might be, whether enlarged or diminished in the future; and that the board of education, although invested with certain limited corporate powers, should be one of the departments of the city government, much like a board of public works or park commissioners. Hence any territory annexed to the city becomes a part of it for school as well as for other municipal purposes. To hold otherwise, in view of the provisions of the act of 1878, would lead to much confusion and many incongruities. Take, for example, this very case: If the territory annexed to the city remains a part of the defendant district, the inhabitants would be entitled to take part in the election of members of the board of education of the city, and their property be taxed for the support of city schools, in the benefits of which they would have no part. We are therefore of opinion that by its annexation to the city this territory was detached from, and is no longer a part of, the defendant district. *Connor* v. *Board of Education*, 10 Minn. 352, (439.)

It is urged that the act of 1887, amending the charter of the city of Winona, if held to have the effect of thus changing the boundaries of these school-districts, would be in conflict with section 27, art. 4, of the state constitution, because that subject is not expressed in the title of the act. We think a moment's reflection will suggest that there is nothing in this point. Every provision of that act is germane to the subject expressed in the title. If it repeals or alters any other act, it is by implication, because of repugnancy or inconsistency. If the title of an act embraces only one subject, we apprehend it was never claimed that every other act which it repeals or alters by implication must be mentioned in the title of the new act. Any such rule would be neither within the reason of the constitution nor practicable. It would compel the legislature in every instance to search the entire body of our statute law to ascertain what acts might be inconsistent with or repugnant to the provisions of the proposed act,—a work, in many cases, so difficult as to amount to an impossibility. *State* v. *Smith*, 35 Minn. 257, (28 N. W. Rep. 241.)

We have, then, a case where the legislature has changed the bound-aries of two municipalities, (but without abolishing either,) so that corporate property acquired and held by one for public or govern-mental purposes now falls within the territorial limits of the other, but has made no provision for the division of the property or appor-tionment of the debts of the two incorporations. The question is, under such a state of facts, does the property continue to belong to the incorporation from which the territory has been detached, or has it become the property of the municipality within whose limits it now falls? The absolute right of the legislature, in all cases not within any constitutional prohibition, to create, alter, divide, or abolish all municipal corporations, or *quasi* corporations, and to make such divis-ion and apportionment of the corporate property and debts of an old corporation, in case of a division of its territory, as the legislature may deem equitable, is well settled. This doctrine has been fully recognized by this court. *State* v. *City of Lake City*, 25 Minn. 404. But in the present case the legislature has made no such division or apportionment. The rule generally laid down in both the text-books and the adjudicated cases is that, if a part of the territory of a mu-nicipal corporation is separated from it by annexation to another, or by the erection of a new corporation, the old corporation still retains all its property, and is responsible for all its debts, unless some other provision is made by the act authorizing the separation. In fact, this general rule is not questioned or denied by plaintiff's counsel, but they claim that it is subject to a limitation or exception as to real property; that as to such property the old corporation only retains what remains within its boundaries, and that whatever is situated in the territory detached from it belongs to the corporation to which it is annexed, or the new one into which it is erected. The paucity of decisions directly in point on this precise question is somewhat surpris-ing. The earliest cases in this country involving the subject of the disposition of corporate property or debts, on division of municipal cor-porations, arose under the township system of New England, where the township was parochial as well as civil; each township originally constituting but one parish. Subsequently, as the country became more densely populated, new towns or new parishes would be erected

out of part of the territory of the original one, and the question would arise as to the title of the parish meeting-house or other town property, or as to which corporation was responsible for town liabilities contracted or incurred before the division.    In all these cases, beginning with that of *Windham* v. *Portland*, 4 Mass. 384, the rule is laid down as we have already stated it; Parsons, C. J., in the case just cited, adding: "Thus it [the old town] would continue seised of all its lands, possessed of all its personal property, entitled to all its rights of action, bound by all its contracts, and subject to all its duties." . See, also, *Hampshire* v. *Franklin*, 16 Mass. 76, 86, and *First Parish in Medford* v. *Pratt*, 4 Pick. 222.    It is true that in none of these cases did the question arise as to corporate realty situated in the detached territory, but no exception as to such property is even suggested.

In *School-Dist.* v. *Richardson*, 23 Pick. 62, although only *obiter*, it is said that the alteration of a school-district, by increasing or diminishing its size, would not destroy its identity, or affect its rights of property; that, as the identity of the corporation would remain, it would seem that the property would not be divested, although the school-house, by the newly-assigned limits, might fall without the territory of the district.

In *Union Baptist Society* v. *Town of Candia*, 2 N. H. 20, the proprietors gave the town of Chester a lot for the use of the ministry. A portion of the town, including this lot, was subsequently incorporated into a separate town by the name of "Candia." The town of Candia having realized a sum of money by an assumed lease of the lot, the plaintiff, a religious society, incorporated and worshipping in Candia, brought suit for a portion of the interest on the fund.    It is true that it may be said that this lot was not strictly public or corporate property, but merely held in trust by the town for pious uses. But in deciding the case the court say the facts do not raise the question whether a town, as a civil corporation, has the sole right to property given "for the use of the ministry," or whether each individual, each settled minister, or each religious society in the town has a proportionate right to it.    "Because the lot was granted to Chester, and not to Candia, and whether by the grant there vested in Chester an absolute fee, a base fee determinable on the settlement of a minister,

v.40m—2

a trust for each theological association, or any other imaginable interest, is of no consequence.   *   *   *   It is apparent that when Candia was formed from Chester, though this lot fell within its boundaries, it was not conveyed to that town, either in its charter or by any vote of Chester. The title to it, therefore, like the title to all other land within its limits, remained unchanged, and the town [of Candia] acquired over that, as over other land, only a corporate jurisdiction." This was approved in *South Hampton* v. *Fowler*, 52 N. H. 225, 230.

*Whittier* v. *Sanborn*, 38 Me. 32, is directly in point. It was there held that the alteration by a town of the lines of a school-district, whereby its school-house is left within the limits of another district, will not defeat or affect its right of property therein. See also *North Yarmouth* v. *Skillings*, 45 Me. 133.

In the case of *Board of Health* v. *City of East Saginaw*, 45 Mich. 257, (7 N. W. Rep. 808,) the facts were that land had been conveyed to the board of health in trust for cemetery purposes for the township of Buena Vista. Subsequently the city of East Saginaw was incorporated out of a part of the township, including the cemetery. This case, while perhaps, like *Union Baptist Society* v. *Town of Candia*, distinguishable in its facts from the present one, is nevertheless in point, in view of grounds upon which its decision is made to rest, and the legal propositions laid down by the court. It was there held that corporate property is not affected at common law by changes which leave the corporate character in existence, and do not destroy the corporate identity; that there is no common-law rule by which property can be transferred from one corporation to another without a grant; and that, as there was no statute making any different provision, the property was unaffected by the change in boundaries.

In *Town of Milwaukee* v. *City of Milwaukee*, 12 Wis. 93, a portion of the town was annexed to the city, including a tract of land which the town had acquired by purchase. It was held that the act extending the city limits over the land in question did not divest the town of its title. The case does not disclose for what purpose the town acquired or used the land, but it is fair to assume that it was only for some public and municipal purpose. The weight of the de-

cision as an authority in point, however, is weakened by the fact that the court denied the power of the legislature to divest a corporation of its property without the consent of its inhabitants.

In *Town of Depere* v. *Town of Bellevue*, 31 Wis. 120, the broad and unqualified proposition was laid down that, if a part of the territory of a town is separated from it by annexation to another, or by the creation of a new corporation, the remaining part of the town, as the former corporation, retains all its property, and remains subject to all its obligations, unless some express provision to the contrary is made by the act authorizing the separation. In this case, however, the only question before the court was the right of the old town to compel the new town to contribute towards the payment of corporate debts contracted before the division. We find no *decision* in conflict with this rule, although there are some *obiter dicta* suggesting the limitation or qualification of it contended for by plaintiff. Thus in *Hartford Bridge Co.* v. *East Hartford*, 16 Conn. 149, 171, after stating the rule as above, the court adds: "At least as it regards property which has no fixed location in the new town, as lands, buildings, etc." And in *School-Dist.* v. *Tapley*, 1 Allen, 49, the court, referring to the *dictum* in *School-Dist.* v. *Richardson*, *supra*, remarks: "It is at least questionable whether the better practical rule in all cases would not be to regard this species of property [school-houses] in towns as strictly local in its character and uses, and as vesting in the district in which, upon any new division, it might chance to fall." How far this remark was suggested by the peculiar relations which school-districts and school property bore to the towns in that state it is impossible to say.

In *Laramie Co.* v. *Albany Co.*, 92 U. S. 307, 315, the judge delivering the opinion says: "Old debts she [the original corporation] must pay without any claim for contribution, and the new subdivision has no claim to any portion of the public property, except what falls within her boundaries, and to all that the old corporation has no claim." The same limitation is repeated in *Mt. Pleasant* v. *Beckwith*, 100 U. S. 514, 525, and quoted by this court in *State* v. *City of Lake City*, *supra*.

This is all that we have been able to find in support of plaintiff's con-

tention. But it is a remarkable fact that these suggestions of a limitation or qualification of the rule are not only pure *obiter*, but the question is not discussed, no reason is assigned, and no authority cited in its support, unless it be the old case of *North Hempstead* v. *Hempstead*, 2 Wend. 109, which, as we shall see, is not at all in point.

There is a line of cases, often confounded with, but clearly distinguishable from, that now under consideration, where the old corporation was entirely abolished, and new ones created out of its territory. In such cases it is well settled that the new corporations are to be deemed the successors of the old one, and as such liable for all its debts, and entitled to all its property. And in the absence of any legislative provision on the subject, it is held in such cases that each of the new corporations will take the property which happens to fall within its limits. This result the courts have arrived at from what seem the necessities of the case, in view of the defective legislation on the subject. *School-Dist.* v. *Richardson, supra,* and *School-Dist.* v. *Tapley, supra,* fall under this head. Cases where two corporations have been united or consolidated into one may also be placed in this class. Such is *Robbins* v. *School-Dist.*, 10 Minn. 268, (340, 349.) The case of *North Hempstead* v. *Hempstead, supra,* also belongs to this class; for, as we understand the statement of facts, the original town of Hempstead had been entirely abolished, and two new towns erected out of its territory, called, respectively, North Hempstead and South Hempstead,—the latter afterwards changed to Hempstead; and notwithstanding some loose remarks, apparently on both sides of the question we are now considering, the court made the decision of the case largely to turn upon the fact that the two new towns had acquiesced in a practical division of the property (common) for 37 years, and therefore, whatever their rights might have been at the date of the division, they were barred by the lapse of time. In *Connor* v. *Board of Education, supra,* the title of the school-house was held to be in the city of St. Anthony, not by virtue of the act of 1860, extending the city limits, but under the express provisions of the act of 1861.

The authorities on the question, so far as there are any, are therefore all against the contention of plaintiff; and upon reason and prin-

ciple we cannot see why any distinction should be made as to property which, on change of boundaries, falls within the limits of another municipality, or why the title should not, like that of all other property, remain unaffected by the change. A municipal corporation is an artificial person, and not mere territory. The annexation of territory to it merely gives it municipal control over it, and not title to the land. In this case the plaintiff and defendant are the identical corporate entities they were before,—the one with enlarged, and the other with diminished, area. The school-house was at the time of the change of boundaries the property of defendant. It could not be transferred to the plaintiff, except by grant. There has been no express grant, and we can see no ground upon which it can be held that there was an implied one.

It being settled law that upon a change of boundaries (not abolishing the corporation) the old corporation is, upon the ground that it is the same legal entity as before, liable for all corporate debts without any claim for contribution against the corporation to which the territory is annexed, or into which it is erected, it would seem to follow, as the complement of this and upon the same ground, that the old corporation retains all the corporate property regardless of situation. No general rule will work equitably in all cases. In each case the legislature ought to inquire into the facts, and make what would be an equitable division of property and apportionment of debts, in view of the particular facts of the case. But where this has not been done, and the courts are compelled to adopt some general rule, we think the one we have suggested is most in accordance with legal principles, and will work approximate justice in more cases than any other. The only argument advanced in favor of the rule contended for by plaintiff which has any weight, is that it is to be presumed that the legislature intended public corporate property to be continued to be used for the purpose for which it was acquired; and as it cannot be used for that purpose by the old corporation, if without its territorial limits, therefore it must be presumed that the legislature intended it to pass to the corporation within whose limits it fell on the change of boundaries. We think this line of argument both presumes and assumes too much. It is rather strained to pile up one presumption on top of another, in order

to make out an implied legislative grant; and the assumption that a municipal corporation can never hold and use for municipal purposes property situated outside of its territorial limits is not fully warranted by any legal doctrine. Doubtless the statutes generally contemplate that property thus acquired and held should be situated within the municipal limits, and it is equally true that for most municipal purposes the property must be so situated, and the courts would take notice of the fact that this is true of school-houses; but it would be too much to say that this is necessarily true as to property held for any and all municipal uses. And while it may be true, as a matter of law, that a school-district cannot continue to use for school purposes a school-house which, upon a change of boundaries, ceases to be within its limits, it may be equally true, as a matter of fact, that it cannot, on account of its location, be used for that purpose by the corporation to which it is annexed; and therefore all it can do with it, if it gets it, is to sell it, and use the proceeds in erecting one more suitably located. If this be done, it can be as well done by the old district, which would ordinarily have the most equitable claim to it.

Judgment affirmed.