THE SCHOOL DISTRICT OF OAKLAND v. THE SCHOOL DISTRICT OF JOPLIN, Appellant.—102 S. W. (2d) 909.

Division Two, March 11, 1937.

*John W. Scott* and *Haywood Scott* for appellant.

*Ray Bond* and *McReynolds & Flanigan* for respondent.

*Alva F. Lindsay* for School District of St. Joseph.

*Irwin & Bushman* for School District of the City of Jefferson.

BOHLING, C.—Action to quiet and determine title and for ejectment, damages and monthly rents and profits. From a judgment vesting title in plaintiff, the School District of Oakland, and awarding damages, etc., defendant, the School District of Joplin, appeals.

The case is submitted on an agreed stipulation of facts; and clearing away the underbrush, the contested issues presented revolve around the question: Does real property purchased from public funds held by and conveyed by general warranty deed to a town school district of less than nine square miles in area become the property of a city school district upon the extension of the boundaries of the latter so as to embrace the territory within which said property of the former is situate?

The School District of Oakland, having two hundred or more children of school age, was organized into a town school district in 1913 (Art. 4, Chap. 57, R. S. 1929, Mo. Stat. Ann., p. 7164) and territorially embraced that part of Sections 35 and 36 north of Turkey Creek and the south half of Sections 26 and 25, in Range 33; and the south three-fourths of Section 30, the south three-fourths of the west half of Section 29, the west half of Section 32, and all of Section 31, in Range 32; all in Township 28, Jasper County, Missouri. It adjoined the city of Joplin on the north.

The School District of Joplin is a city school district organized under said Article 4.

The School District of Oakland maintained two school buildings—one in the eastern and the other in the western portion of said district. The property here involved is the school site and building maintained in Section 36 aforesaid, the westward portion of said district. On June 11, 1929, the city of Joplin extended its corporate boundaries to include said Section 36. See State ex inf. Mallett ex rel. Womack v. Joplin, 332 Mo. 1193, 62 S. W. (2d) 393, decided June 12, 1933, upholding said extension of said corporate boundaries. Section 9325, Revised Statutes 1929 (Mo. Stat. Ann., p. 7165), provides that "every extension that has heretofore been made, or that hereafter may be made, of the limits of any city, town or village that is now or may be hereafter organized under the laws of this state, shall have the effect to extend the limits of such town or city school district to the same extent, and such extension of the limits of any city or town school district shall take effect on the first day of July next following the extension of the limits of such city, town or village. . . ." Section

9269, Revised Statutes 1929 (Mo. Stat. Ann., p. 7113), provides that "the title of all school house sites and other school property shall be vested in the district in which the same may be located." The School District of Joplin, asserting dominion over the school building and site of the School District of Oakland located in said Section 36, entered into possession of said premises in August, 1933, under the claim that the extension of the corporate limits of said city likewise operated to extend the limits of the school district of Joplin.

The School District of Oakland had issued bonds in the amount of $10,000, of which amount $5,000 was outstanding at the time of the extension of said corporate limits of Joplin, said indebtedness having been reduced to $4,000, principal amount, at the time of trial.

■ I. Section 1 of Article 11 of the Constitution of Missouri (15 Mo. Stat. Ann., p. 810) provides: "A general diffusion of knowledge and intelligence being essential to the preservation of the rights and liberties of the people, the General Assembly shall establish and maintain free public schools for the gratuitous instruction of all persons in this State between the ages of six and twenty years." The General Assembly, by statutory enactment, has provided for the establishment of units, designated "school districts," their organization, and vested said districts with certain powers and duties (Chap. 57, R. S. 1929, Mo. Stat. Ann., p. 7066) to facilitate its effectual discharge of this constitutional mandate. The school districts are organized as separate legal entities (School Dist. No. 7 v. School Dist. of St. Joseph, 184 Mo. 140, 156, 82 S. W. 1082, 1086). They are public corporations, form an integral part of the State and constitute that arm or instrumentality thereof discharging the constitutionally entrusted governmental function of imparting knowledge and intelligence to the youth of the State that the rights and liberties of the people be preserved. [State ex inf. v. Whittle, 333 Mo. 705, 709 (3), 63 S. W. (2d) 100, 102 (4); City of Edina to Use v. School District, 305 Mo. 452, 461, 267 S. W. 112, 115 (1); State ex rel. v. Gordon, 231 Mo. 547, 574, 133 S. W. 44, 51; State ex rel. v. Stouffer (Mo.), 197 S. W. 248, 252 (4); State ex rel. v. Board of St. Louis Public Schools, 112 Mo. 213, 218, 20 S. W. 484, 485.] ■ They are supported by revenues derived from taxes collected within their respective territorial jurisdictions and the general revenues of the State collected from all parts of the State. These taxes and such property as they may be converted into occupy the legal status of public property and are not the private property of the school district by which they may be held or in which they may be located. [State ex inf. v. Jones, 266 Mo. 191, 198, 181 S. W. 50, 51 (2); State ex rel. v. Gordon, 261 Mo. 631, 641 (3), 170 S. W. 892, 894 (3-5); State ex rel. v. Brooks (Mo.), 249 S. W. 73, 75 (4); City of Edina to Use v. School District, supra; State ex rel. v. Stouffer, supra. Consult 56 C. J.,

p. 435, sec. 408; p. 453, sec. 448; p. 469, sec. 476, note 22; 24 R. C. L., p. 581, sec. 30.]

But, asserting said Section 9269, supra, is a statute of repose and not of transfer or conveyance, plaintiff contends (1st) under statutory enactment and (2nd) under the common law the title to the school house site and buildings here involved is vested in plaintiff free from any right, title or interest of defendant.

II: *Of the statutes.* Chapter 57, supra, relates to "Schools." Article 4 thereof (Mo. Stat. Ann., p. 7164) relates to "City, Town and Consolidated Schools." Section 9325 of said Article 4 (Mo. Stat. Ann., p. 7165) provides that town or city school districts "shall . . . possess the same corporate powers . . . as other school districts except as herein provided. . . ." For a long time prior to 1913, including 1909, plaintiff existed as a common school district. Article 3 of said chapter (Mo. Stat. Ann., p. 7129) is applicable to "Common Schools." Section 9271 of said Article 3, enacted in 1909 (Laws 1909, p. 772, sec. 3), provided for the renumbering of the common school districts of the State. Plaintiff, quoting that portion of said Section 9271 relating to common school districts *holding* and *selling* property, and Section 9284, Ibid, relating to said districts *selling* property no longer required for the use of the district, stresses and quotes, as follows, Section 9272, Ibid: "Each of the school districts, when so renumbered as provided in the preceding section, shall succeed to and receive, *by operation of this statute, the full legal and equitable title to all property of every description.*" From this plaintiff argues that by statutory enactment plaintiff has the full legal and equitable title to the property here involved. This argument proceeds on false postulates and is fallacious for several reasons; among which are: Said Section 9272, insofar as material, reads: "*Each of the school districts, when so renumbered* as provided in the preceding section, *shall succeed to* and receive, by operation of this statute, *the* full, legal and equitable *title to all property* of every description, and to all rights, powers, duties and obligations *possessed by their several predecessors.*" So far as affecting plaintiff, it is at once apparent said statutory provision operated only on that property possessed by plaintiff's predecessor at the time plaintiff's predecessor school district was renumbered in 1910, and transferred, by operation of law, only that title then possessed by said predecessor. Plaintiff acquired part of the property here involved on May 24, 1917, and the remainder on October 10, 1927. Said statute makes no attempt to confer on common school districts when renumbered any greater title than the title of their predecessor or any new or additional rights, titles or interests in and to the State's property thereafter acquired within their boundaries. We are treating of property paid for out of public funds of the State, and need not concern ourselves with possible additional reasons for disallowing the **contention.**

III. *Of the common law.* There are two lines of authority (56 C. J. 269, sec. 113; 24 R. C. L. 566, sec. 10). One, sustaining the position taken by plaintiff, is to the effect that when only a part of the territory of an original school district is annexed to another school district, as between said districts, the title to real property devoted to public purposes by the original district within the detached territory remains the property of the original district. The other, sustaining the position taken by defendant, holds such property, as between said districts, becomes the property of the annexing district—the district within the boundaries of which it is located. The leading cases sustaining the respective contentions are City of Winona v. School District (1889), 40 Minn. 13, 41 N. W. 539, 3 L. R. A. 46, 12 Am. St. Rep. 687, and Pass School District v. Hollywood City School District (1909), 156 Cal. 416, 105 Pac. 122, 26 L. R. A. (N. S.) 485. Counsel appear to have exhausted the authorities on the issue.

After a review of the authorities we are of opinion the legal as well as the practical solution of the issue, when viewed in its larger aspect as a matter of state rather than local concern and as a matter concerning the preservation of the rights and liberties of the people through the education of the youth of the State rather than the momentary financial advantage to accrue to a portion of the inhabitants of a comparatively small territorial district of the State, sustains the position taken by defendant.

The *Winona* case states (40 Minn. 1. c. 19, 20) the expressions in the cases therein considered sustaining defendant's contention "are not only pure *obiter,* but the question is not discussed; no reason is assigned and no authority (in point) cited in its support. . . ." Let us examine the cases relied upon in support of the rule announced in the Winona case. (The italics within the quotations are ours.) It states (40 Minn. 1. c. 18): "*Whittier* v. *Sanborn* (1854), 38 Me. 32, is directly in point." The rule stated in the *Whittier* case and relied upon in the Winona case is credited in the *Whittier* case (38 Me. 1. c. 34) to *School District No. 1* v. *Richardson* (1839), 23 Pick. (40 Mass.) 62, 68, which statement in the *Richardson* case is acknowledged to be *obiter* in the Winona case (40 Minn. 1. c. 17) and considered questionable *obiter* in *dicta* found in School District No. 6 v. Tapley (1861), 83 Mass. 49, 51. If the *Whittier* case is directly in point, it is based on admitted *obiter.* If (the *Whittier* case) involved the right of one upon whose land a school house had been erected by permission to maintain trespass *quare clausam* for an unauthorized removal of the school house, and, in upholding the rights of a private citizen in his private property, the court held plaintiff entitled to nominal damages. *Windham* v. *Portland* (1808), 4 Mass. 384, 389; *Hampshire County* v. *Franklin County* (1819), 16 Mass. 75, 86; and *Medford* v. *Pratt* (1826), 4 Pick. (21 Mass.) 221, 226, as stated in the Winona case (40 Minn. 1. c. 17) did not involve realty situate in the detached ter-

ritory; and the precise issue before us was not ruled in said cases. The *Windham* case was *assumpsit* by one municipality against another for the support of a pauper, and the quotation therefrom in the Winona case (40 Minn. 1. c. 17); " 'Thus it (the old town) would continue seized of all its *lands,* possessed of all its personal property, entitled to all its rights of action, bound by all its contracts, and subject to all its duties,' " was *arguendo* so far as bearing on the instant issue. The *Windham* case is cited as authority for the statement relied on in the *Hampshire* case; but the *Hampshire* case treated the property involved as private property, *vide,* among other statements (16 Mass. 1. c. 83): "It certainly must be admitted that, by the principles of every free government, and of our Constitution in particular, it is not in the power of the Legislature to create a debt from one person to another, or from one corporation to another, without the consent, expressed or implied, of the party to be charged." *Medford* v. *Pratt,* supra, involved a meeting house for public worship, evidently purchased by funds raised by subscription, and conveyed by a "habendum to the *sole* use and behoof of the town for ever." The grant was to the town in its parochial, as distinguished from its municipal, character. [See Harrison v. Bridgeton (1819), 16 Mass. 15, 17; Richardson v. Brown, (1830), 6 Greenl. (Me.) 355, 359.] The later case of Lynn v. Nahant (1873), 113 Mass. 433, treats of real estate held by a municipality in its governmental capacity and rules such property is the property of the municipality in which it lies after a change in boundaries; and (1. c. 451) clears up the confusion arising from the quoted portion of the *Windham* decision as follows: "The general statement in that opinion . . . evidently relates to lands of which it had the absolute ownership, and by no means affirms that those include all the lands within its original territory; and the court had not then had occasion to examine the question of the right and authority of a town over such lands so fully as in the recent cases." *Union Baptist Society* v. *Candia* (1819), 2 N. H. 20, 21, involved a lot given to a town "for the use of the ministry." The property was held for a parochial purpose, and was treated as private property. *South Hampton* v. *Fowler* (1872), 52 N. H. 225, follows 'the *Candia* case (1. c. 230) and expressly recognizes the property as private property (1. c. 231): "So far as respects the land in question, *the town holds it,* if at all, substantially *as a private corporation, and not as a municipal corporation,* created by the government *for the purpose of executing public duties,* exercising, in fact, a portion of the sovereignty of the State; but it holds the land for its own benefit, and by virtue of some special law or usage which authorizes, but does not require, the town to hold it." *North Yarmouth* v. *Skillings* (1858), 45 Me. 133, 142, quotes and cites the *Windham* and *Hampshire* cases, supra, of Massachusetts; but the court found the Legislature had plainly indicated its will that the flats or sledge banks involved were for the

continued enjoyment of the residents of the old and new town. We do not construe the case as attempting to apply the common law. *Board of Health of Buena Vista Township* v. *East Saginaw* (1881), 45 Mich. 257, 258, 261, 7 N. W. 808, 810, involved a cemetery conveyed "in trust for the use of the township as a place for the burial of the dead, and to be used by said board and *said township* as a cemetery and for cemetery purposes, *and for no other purposes whatever;*" with a reversionary clause. East Saginaw was incorporated as a city out of a part of the township. No division of the old township was involved, and the property was held to remain devoted, as before, *to the use of the township as a whole* for cemetery purposes. This accorded with the grant. *Town of Milwaukee* v. *City of Milwaukee* (1860), 12 Wis. 93, 104, and *Depere* v. *Bellevue* (1872), 31 Wis. 120, 125, stress, among others, the *Windham* and *Medford* cases, supra, the latter including *North Yarmouth* v. *Skillings,* supra. The Wisconsin cases treat the property involved as "private" property. It appears, from State ex rel. v. Schriner (1912), 151 Wis. 162, 167, 138 N. W. 633, 635, the Wisconsin Legislature thereafter provided that the school houses situate in annexed territory should become the property of the annexing city and that the rights of the original and annexing governmental agencies should be adjusted.

Other cases cited by plaintiff: *Heizer* v. *Yohn* (1871), 37 Ind. 415, *Reckert* v. *City of Peru* (1878), 60 Ind. 473, were considered distinguished on the facts and not followed in School Town of Leesburgh v. Plain School Township (1882), 86 Ind. 582, 585, which case held that the school district of a town, upon incorporation, succeeds as newly created statutory trustee to the management and control of a school building theretofore erected and maintained by the township upon lands embraced within the corporate boundaries of said town. However, Board of School Commissioners of Indianapolis v. Center Township (1896), 143 Ind. 391, 398, 42 N. E. 808, 810, states the distinguishment in the Leesburgh case "was practically a mild way of overruling those cases." The Indianapolis case applied Indiana statutory law; but the contention by the township that the statute was retrospective and void as to vested rights rendered necessary a determination whether or not the township held vested rights in property devoted to school purposes. After reviewing the earlier Indiana cases, the court ruled (143 Ind. l. c. 400) : "According to the established doctrine of these cases, the school corporation of the city of Indianapolis, by annexation of the territory, became the successor in the title and right to control and use the school buildings for the benefit of the common schools of said city." The Indianapolis case was followed in Maumee School Township v. School Town of Shirley (1902), 159 Ind. 423, 426, 65 N. E. 285, 286 (which plaintiff concedes sustains defendant), and City of Jeffersonville v. Jeffersonville School Township (1921), 77 Ind. App. 32, 130 N. E. 879. *Board of Educa-*

*tion* of *Kansas City* v. *School District* (March 7, 1891), 45 Kan. 560, 26 Pac. 13, and City of Wellington v. Wellington Township (April 11, 1891), 46 Kan. 213, 227 (6), 26 Pac. 415, 420 (6), were written by SIMPSON, C. The former sustains plaintiff's position but cites no authority in support thereof. The latter, recognizing the existence of conflicting expressions in the two Kansas cases, questions and criticizes, and, in effect, overrules the former, which it states was ruled upon a consideration of the Indiana cases of *Heizer* v. *Yohn* and *Reckert* v. *City of Peru*, supra, overruled, as we have pointed out, by the Indiana Court in 1882. *Board of Education of Monroe Township* v. *Board of Education of the Village of Dell Roy* (1889), 46 Ohio St. 595, 22 N. E. 641. Monroe Township constituted a single school district, composed of subdistricts. In subdistrict No. 5 was located a school building for higher grade students and two primary grade buildings. Subdistrict No. 5 was organized into a village and, under statutory provisions passing title to school property to the board of education having jurisdiction, took possession of all three buildings. The case involved only the building used for higher education. The court considered the general words of the statute sufficiently broad to transfer, by operation of law, title to all buildings; but, as township boards of education were authorized to create and maintain *for the benefit of the whole township*, schools providing education above the primary grades, held there existed a legislative intent exempting from the transfer of title of school property by operation of law upon the organization of an independent school district within a township that school property acquired by the township for the higher grades and held for the benefit of the *township as a whole*. *Franklin District Township* v. *Wiggins* (1889), 110 Iowa, 702, 80 N. W. 432, is ruled by Iowa statutory provisions (McClain's Code, secs. 2821, 2921) which the court considered would have to be complied with as a condition to the passing of school property to the new district. In *Bloomfield* v. *Glen Ridge* (1897), 55 N. J. Eq. 505, 37 Atl. 63, Bloomfield township had constructed a sewer system and sought to restrain the Borough of Glen Ridge, which had been formed thereafter out of a part of said township, from exercising any authority over that portion of the system within the corporate boundaries of said Borough. The case was before the court on demurrer, which the court sustained. What was there said upholding the authority of Bloomfield over that portion of the system in Glen Ridge (sustaining plaintiff's position), although the mature deliberation of the court, was, and was recognized as, not essential to the decision rendered. The case relied on the authorities relied on in the Winona case and the Winona case, hereinbefore discussed, in support of its *obiter*. A sewer system, with interdependent mains and laterals, operates as a unit. *People ex rel. Richberg* v. *Trustees of School Tp. 39* (1877), 86 Ill. 613, was a mandamus proceeding to require the old school district to apportion

funds derived from the sixteenth section of a township to a new district acquiring some territory within the township. The sixteenth section remained situated in the old district. The instant issue was not before the court. *Douglas County* v. *Grant County* (1913), 72 Wash. 314, 329, 332, 130 Pac. 366, 368 (1), 369 (3), contains *obiter* tending to sustain the contentions of both plaintiff and defendant on the instant issue and is quoted by both litigants in the instant case.

Plaintiff admits the following cases sustain defendant's position: Pass School District v. Hollywood City School District (1909), 156 Cal. 416, 419, 105 Pac. 122, 123, 26 L. R. A. (N. S.) 485; Board of Education of Fulton County v. Board of Education of College Park (1918), 147 Ga. 776, 779, 95 S. E. 648, 685 (3): Maumee School Township v. School Town of Shirley City (1902), 159 Ind. 423, 426, 65 N. E. 285, 286; Consolidated School District No. 1, Alfalfa County, v. School District No. 24, Alfalfa County (1912), 33 Okla. 320, 322, 125 Pac. 729, 730; Prescott v. Lennox (1898), 100 Tenn. 591, 592, 47 S. W. 181. The following cases bear on the issue to a greater or less extent and sustain or tend to sustain defendant's position: Lynn v. Nahant, supra; School Town of Leesburgh v. Plain School Township, supra; Board of School Commissioners v. Center Township, supra; Jeffersonville v. Jeffersonville School Township, supra; City of Wellington v. Wellington Township, supra; Board of Education of Jefferson County v. Board of Education of Louisville (1918), 182 Ky. 544, 545, 206 S. W. 869 (2); Board of Education of Barker District v. Board of Education of Valley District (1887), 30 W. Va. 424, 431, 434, 4 S. E. 640, 643, 645; North Hempstead v. Hempstead (1828), 2 Wend. (N. Y.) 109, 135; Jefferson Township Rural School District v. Hoover (1920), 13 Ohio App. 346, 348. These cases proceed upon the theory the beneficial ownership of the fee of school (or other governmental) property acquired from public funds is vested in the State; that the State has created agencies or mandatories, designated in Missouri school districts, has constituted them public corporations, vested in and imposed upon them enumerated powers and duties to be exercised within their respective territorial boundaries, and, for the efficient discharge of such powers and duties, has made them trustees of said public property for the benefit of the *cestui que trust*, the public, charged with the powers conferred and duties imposed by statute, and upon a lawful change of their boundaries, such as we have in the instant case, a new or different statutory trustee is substituted for the former statutory trustee. The situation is somewhat analogous to a principal having several agents, say A and B, within whose respective territories are located property of the principal purchased by funds derived from the business transacted within the respective territory and by funds advanced by the principal. Should the principal determine it would be advantageous to extend the territory of A so as to embrace territory of B within which property of the principal is located, in the absence of some obligation imposed on A by the

principal or entered into between A and B we perceive no reason why A should not have the use and benefit of the principal's said property for the advancement of the principal's interests free from interference by B. The retention of B's interest therein by B and a denial thereof to A might defeat that advancement of the principal's interest sought to be accomplished through the enlargement of A's territory. The private property of B, protected by constitutional and other guarantees, would present an entirely different issue.

Additional comment and discussion of authorities may be found in the cases cited, notably the Pass School District, the Board of Education of Fulton County, the Board of Education of Jefferson County, the Consolidated School District No. 1, Alfalfa County, the Prescott, the Wellington, and the Board of Commissioners of the city of Indianapolis cases, supra, supporting defendant's position.

An examination of the authorities reveals that among the factors entering into a determination of the issue are: The grant under which the property is held; the nature of the use made of the property, i. e., whether or not the authorized use is essentially for the original agency as a whole; and whether the property is considered held in the exercise of some governmental function or as private property. The Winona case in reality harks back to statements in Massachusetts cases wherein the property involved was considered private property. That this is the foundation of the ruling in the Winona case is evidenced by the statement (40 Minn. l. c. 20, 21): ". . . Upon reason and principle we cannot see why any distinction should be made as to property, which on change of boundaries falls within the limits of another municipality, or why the title should not, like that of all other property, remain unaffected by the change." Therein lies the distinction—the distinction between a private and a governmental interest. In Missouri the property of school districts acquired from public funds is the property of the State, not the private property of the school district in which it may be located, and the school district is a statutory trustee for the discharge of a governmental function entrusted to the State by our Constitution.

The statutes relating to the schools of the State embrace a comprehensive scheme whereby the General Assembly has provided for the establishment and maintenance of free public schools. The general terms and specific provisions found therein preclude the construction that they apply only to conditions existing at the time of their enactment, unless the context of a given statute indicates such a legislative intent. The duties imposed and the powers conferred upon school districts and their officials are essentially permanent and continuing Section 9269, supra, of Article 2, applicable to all classes of schools, is declaratory of the common-law rule contended for by defendant in providing "the title of all school house sites and other school property shall be vested in the district in which the same may be located . . ."

Plaintiff states it is morally wrong to permit defendant to seize plaintiff's property without paying for it. On the other hand, to rule with plaintiff would have a similar effect on that portion of defendant school district annexed by defendant. But, we have ruled the property involved is public property of the State, not the property of plaintiff or defendant. The General Assembly, as is within its power, has undertaken to provide protection for school districts in plaintiff's situation. Under the provisions of Section 9344, Revised Statutes 1929 (Mo. Stat. Ann., p. 7181), plaintiff, its territory not embracing nine square miles as we read the record, may become, if it so desires, a part of defendant school district. In such event, it appears that plaintiff's obligations would become defendant's obligations (Hughes v. School Dist., 72 Mo. 643, 644 (1); Thompson v. Abbott, 61 Mo. 176, 177). We need not pursue the issue further.

The judgment is reversed. *Cooley* and *Westhues, CC.*, concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.