THE INHABITANTS OF THE TOWNSHIP OF BLOOMFIELD, IN THE COUNTY OF ESSEX, appellant,

*v.*

THE MAYOR AND COUNCIL OF THE BOROUGH OF GLEN RIDGE et al., respondents.

1. When a municipal corporation is divided, the old corporation retains title to all its property, unless provision is made to the contrary by the act authorizing the division.

2. Where the new corporation attempts to interfere by ordinance with such property, the appropriate remedy is by *certiorari* to set aside the ordinance.

3. Trespasses of an ordinary character, upon public works, are to be redressed by an action at law in the usual manner.

On appeal from a decree advised by Vice-Chancellor Reed, whose opinion is reported in *Bloomfield* v. *Glen Ridge, 9 Dick. Ch. Rep. 276.*

*Messrs. Colie & Swayze,* for the appellant.

*Messrs. Coult & Howell,* for the respondents.

The opinion of the court was delivered by

VAN SYCKEL, J.

The township of Bloomfield, in connection with the city of Orange, constructed a system of sewers by which the territory of Bloomfield was sewered. Afterwards, on the 12th of February, 1895, the borough of Glen Ridge was formed out of part of the township of Bloomfield. Prior to that date Bloomfield had constructed lateral sewers in what is now the territory of Glen Ridge, at an expense of over $30,000.

On the 20th of May, 1895, the common council of said borough of Glen Ridge passed an ordinance entitled "An ordinance to establish rules and regulations for the management and use of the public sewers, drains and appurtenances and connec-

tions therewith," by which it is ordained that the sewer commit-
tee of the said council shall have charge of all public sewers and
drains within said borough, and that all connections therewith
shall be made under the supervision of said committee, and that
no connection shall be made without a permit from said commit-
tee ; and that any person who shall make connection with such
sewers contrary to the provisions of said ordinance, shall forfeit
$25 for each offence.

The inhabitants of Bloomfield filed their bill, setting up these
facts, and alleging that the borough of Glen Ridge had, by vir-
tue of the aforesaid ordinance, asserted its ownership of so much
of said sewer system as lies within the limits of said borough,
and threatened to take absolute control and management thereof.
The prayer is for an injunction restraining the borough from
interfering with the complainant's sewers within the limits of
the borough, and from exercising any authority over them.

The question which the complainant submits for decision is
whether the title to, and the right to control, the sewers lying
within Glen Ridge resides in the township of Bloomfield or has
passed to the borough government.

There is no legislation providing for a division of property
between the two local governments.

The Borough act of 1878 gives no power over sewers.

The first act relating to sewers in boroughs is that of March
23d, 1892 (*P. L. of 1892 p. 196*), which gives power to pur-
chase sewers from private individuals or corporations owning
them.

The act of April 7th, 1892, applies only to boroughs having
authority by their charters to adopt a general plan of sewerage,
and does not apply to Glen Ridge.

The act of March 14th, 1893 (*P. L. of 1893 p. 271*), does not
apply to existing sewers, but simply provides for the construc-
tion of sewers.

The act of March 27th, 1893 (*P. L. of 1893 p. 460*), is of
like purport.

There is no other pertinent legislation in this respect. The
acts of 1895 and 1896 do not divest the title of the old corpora-

tion or transfer the title to its property to the detached territory. They provide a way in which property may be divided between certain local governments, but so far as appears no action has been taken in this case under these laws, and it is questionable whether they apply to Glen Ridge.

The township of Bloomfield constructed the sewers and issued bonds to an amount exceeding $55,000 for the money expended upon them. Those bonds are still outstanding, and the township as now existing is alone responsible for them. *Dill. Mun. Corp.* § *128.* That the sewers thereby became the property of the township will not be denied.

Do they continue to belong to Bloomfield or have they passed to that part of the territory severed from it and now forming part of Glen Ridge?

The cases relied upon to support the title of Glen Ridge are the following: *Bridge Company* v. *East Hartford, 16 Conn. 171; School District* v. *Tapley, 1 Allen 49; Laramie County* v. *Albany, 92 U. S. 315; Mount Pleasant* v. *Beckwith, 100 U. S. 525; North Hempstead* v. *Hempstead, 2 Wend. 109.*

The case in *16 Conn.* does not hold that the title to lands and buildings will pass to the territory in which they lie; the court said that when territory of a municipal corporation is divided, and a new one erected, the old corporation retains all the property, rights and privileges formerly belonging to it, at least so far as regards property which has no fixed location.

The case in *1 Allen 49* presents this situation: A town formed new school districts within its own territory by abolishing the old ones, and it was held that the legal title to the existing school-houses vested in the new districts within whose territory they were. The town had power to change the districts at will. All the districts being within its own limits, it was a matter of internal concern only, and did not affect another municipality. Judge Hoar based his opinion upon the fact that the old districts were wiped out, and said it was unnecessary to determine what the rule would be where there was only an alteration of the limits of the old district.

*Laramie County* v. *Albany, supra,* involved only the ques-

tion of the liability of the old corporation for all its debts con-. tracted prior to the severance.

*Mount Pleasant* v. *Beckwith, supra,* is a case where the old cor- poration was legislated out of existence, and all its territory an- nexed to other corporations. The property of the extinct cor- poration, as well as the liability for its debts, passed to the corporation which had absorbed it. There was no other place in which the title could reside.

The case in *2 Wend. 109* was where a town had been divided into two distinct and separate municipalities, and the old corpo- ration no longer existed.

It must have been the legislative intent that each division should succeed to the title to the property within it.

In my judgment, the weight of authority is decidedly on the side of the township of Bloomfield.

In *Windham* v. *Portland, 4 Mass. 384,* in discussing this. question, Chief-Justice Parsons said : "If a part of the terri- tory and inhabitants of a public corporation are separated from it by the erection of a new corporation, the former corporation still retains all its property, powers, rights and privileges, and remains subject to all its obligations and duties, unless some new provision be made by the act authorizing the separation."

*Windham* v. *Portland* was approved in *Hampshire* v. *Frank- lin, 16 Mass. 76,* where Chief-Justice Parker declared that the rule as stated in the former case was correct, unless some express provision to the contrary be made by the act authorizing separa- tion. It was not suggested in these cases that it would make any difference in the rule where the property was situated in the de- tached territory.

In *Society* v. *Candia, 2 N. H. 20,* it appeared that Candia was formed from Chester, and that the land in question was in Candia, yet it was held that the title to it remained in Chester.

*South Hampton* v. *Fowler, 52 N. H. 225 ; Board* v. *City of East Saginaw, 45 Mich. 257,* and *Winona* v. *School District, 40 Minn. 13,* support the proposition that the old municipality re- tains title to all its property, including that which, upon the change of boundaries, happens to fall within the limits of the other corporation.

The cases in Wisconsin are to the same effect. *Town of Milwaukee* v. *City of Milwaukee, 12 Wis. 93; Town of De Pere* v. *Town of Bellevue, 31 Wis. 120.*

These cases rest upon sound principle, as it is difficult to perceive how the title to property passes from the old to the new corporation by the mere fact that it falls within the limits of the latter. Glen Ridge acquired by its incorporation mere municipal control over the territory within it. The legislation under which it acquired such municipal control contains no provision bestowing upon it title to lands or property of any kind; it has simply a capacity to acquire property for its public purposes.

The argument advanced that the new corporation will take the property within it because the old corporation cannot use the property outside its limits for the purposes for which it was designed, will not apply to this case. This sewer system is an entirety, and cannot be advantageously controlled and devoted to its intended uses unless it is under one management.

If a new municipality should be carved out of part of the territory of the city of Newark, the right of such new municipality to exercise an independent control over such sewers and water-mains as were within its limits could not be recognized without impairing the safety of the entire system. Public policy is manifestly against the admission of such dual control.

The difficulty of suggesting a way in which a public corporation could be divested of its title, except by making a grant or by legislative enactment, presented itself to our supreme court in *Dummer* v. *Jersey City, Spenc. 86.*

We therefore conclude, both upon reason and authority, that the title to these sewers remained unchanged by the creation of the borough, and that the right to control and regulate and maintain them is vested exclusively in the township of Bloomfield.

The right of the residents of Glen Ridge to use the sewers under reasonable regulations to be established by the township of Bloomfield and without unjust discrimination against them is a question not involved in this controversy, nor is it intended to deny the right of Glen Ridge to control and regulate the high-

ways within its territorial limits, within which these sewers are laid.

We deem it to be the duty of this court to express its view of this question, as the facts are undisputed, and as it is of the utmost importance to both parties to the controversy that the title to this property, held for public purposes, shall be no longer in doubt, although the question as to the right to maintain this bill in equity must be decided upon another ground, which does not involve the question of title.

The foundation upon which the complainant's right to relief rests is that the borough of Glen Ridge has by an ordinance asserted its right to control and regulate the sewers lying within its own territorial limits, and granted some permits to make connections with them.

The principle is well settled that where the rights of individuals or public corporations are invaded by the acts of persons exercising municipal powers in an illegal manner, the parties aggrieved must seek redress by *certiorari.* *Tucker* v. *Freeholders of Burlington, Sax. 283; City of Camden* v. *Mulford, 2 Dutch. 49; State, Gregory* v. *Jersey City, 5 Vr. 390; State* v. *Washington, 15 Vr. 605; South Orange* v. *Whettingham, 29 Vr. 657; Hunt* v. *Lambertville, 17 Vr. 59.*

That the legality of these ordinances can be reviewed and the proceedings under them arrested by *certiorari* cannot be successfully controverted.

The existence of an adequate remedy at law excludes the right to invoke the aid of a court of equity.

*Certiorari* is the appropriate proceeding to test the validity of municipal ordinances, and, so far as appears, it will be an adequate remedy in this case. It is not to be presumed that the public officers to whom such writ is addressed will attempt to take any action in virtue of such ordinances pending the litigation.

It is not intended to deny that an appeal to the injunction power of equity may be appropriate, where the illegal interference with a sewer system is persistent and continued, and of such a character as to prevent its beneficial use by the corpora-

tion entitled to control it. In a matter vitally concerning the public health and safety, such an injury would be considered irreparable. Trespasses of an ordinary kind upon public works can be redressed by an action at law as readily as trespasses upon private property.

It is suggested that the equity jurisdiction should be retained, even though the appropriate remedy would have been by suit at law, because the facts are undisputed and the rights of the parties could now be determined and finally adjudged without requiring the complainant to resort to further litigation. There is a discretionary power to retain the suit and finally adjudicate upon the rights of the parties, but it has been exercised in rare cases and under peculiar circumstances. *Palys* v. *Jewett, 5 Stew. Eq. 302*, and *Higgins* v. *Flemington Water Co., 9 Stew. Eq. 538*, are instances.

The case now considered is before us on demurrer to the complainant's bill, and has no feature which distinguishes it from any other case in which the party defendant challenges the jurisdiction of the court of equity.

For the reason that there is an appropriate and adequate remedy at law, the decree below, dismissing the complainant's bill, should be affirmed.

*For affirmance* — DEPUE, DIXON, GARRISON, GUMMERE, LIPPINCOTT, MAGIE, VAN SYCKEL, BARCALOW, BOGERT, DAYTON, HENDRICKSON, KRUEGER, NIXON—13.

*For reversal*—None.