(NOTE: This opinion was filed on April 8th, 1947, and by reason of further litigation is now published by direction of the court.)
I ought perhaps to divulge at the outset that a preliminary facet of the present cause was heretofore submitted to me for consideration. 138 N.J. Eq. 598; 49 Atl. Rep. 2d 491.
In 1937 the governing body of the Township of Piscataway under the shelter of the amendment of our constitution (article 4,section 6, paragraph 5) and the responsive legislation thereupon enacted (R.S. 40:55-30 et seq.; N.J. *Page 764 S.A.) composed and duly adopted a zoning ordinance. The territory of the township was divided into designated residential, business, and industrial districts. The slaughtering of edible animals was expressly prohibited in the industrial district and not specifically permitted among the restricted uses of property in the other districts. In its consequential effect, the use and maintenance of any property for the slaughtering of animals was and is prohibited throughout the entire township. Such was undoubtedly the deliberate purpose of the municipal legislative officials.
In 1943 the representatives of the municipality, actuated by the spirit of patriotism, seem to have relented and on February 10th, 1943, the Board of Adjustment under certain admonitory requirements granted to one Edward Geschwind the privilege of slaughtering animals at the premises now owned by the complainants for a period "not later than three (3) months after cessation of hostilities of the present war." Geschwind and his associate Hoffman availed themselves of that permission until March 20th, 1946, when they negotiated a sale of the premises and their business thereon conducted to the complainants for the purchase price of $15,000. The complainants were somewhat alert and insisted that the sale should be contingent upon the purchasers' obtaining "a license" to continue the utility of the premises in the business of a slaughterhouse.
The complainants received from the State Board of Health on March 26th, 1946, a permit to conduct the specified business on the designated premises. The complainants, evidently unaware of the restrictions of the zoning ordinance, on April 11th, 1946, consummated the purchase of the premises and of the existing business.
To their apparent amazement, a communication addressed to them under date of July 1st, 1946, from official municipal circles commanded them to cease at once the slaughtering of animals on their premises and to produce to the Board of Adjustment on July 30th, 1946, an explanation, if any, of their illegal and inhibited business operations. The complainants responded and presented to the board a petition signed by the nearest residents in the vicinity of their property *Page 765 
favoring an acquiescence in the continued maintenance of the slaughterhouse. The board dismissed the complainants with the conventional assurance that their petition would receive due consideration. In fact, the board on that occasion resolved to forbear the violation of the ordinance until July 31st, 1947. Whether that action was resolute or dependent upon the prospective solicitation of an opinion from the township attorney is problematical under the evidence.
Nevertheless on August 1st, 1946, the Board of Adjustment, without notice to the complainants, decided to rescind their previous resolution and notified the complainants that their acquiescence in the use of the premises as a slaughterhouse would terminate on September 9th, 1946.
In that dilemma the complainants became perplexed. They paused momentarily and in a few days after September 9th, 1946, they ventured to provoke legal proceedings and to submit to judicial determination their opportunity to continue their business. On September 21st, 1946, they were found guilty by the recorder of violating section 9 of the zoning ordinance. Under the terms of the ordinance repeated violations warranted successive prosecutions which in the circumstances were reasonably to be anticipated.
On October 8th, 1946, the complainants, aggrieved by their conviction and by the resultant interruption of their business, applied to a justice of the Supreme Court for a writ ofcertiorari to review the judgment of the recorder and the validity of the ordinance. The application was denied without prejudice to its renewal before the Supreme Court en banc. This latter opportunity was not immediately available.
The complainants thereupon implored this court to grant them some intermediate protection against injury which might eventually prove to be irreparable. I surmise that their application to me was more substantially fortified. It appeared then, and it is equally evident now, that a more unobjectionable location within reasonable proximity to the metropolitan markets could not be discovered in the central segment of the state. There was no persuasive reason to believe that a business permissively tolerated since February, 1943, would in precisely the same method of operation suddenly *Page 766 
jeopardize the public welfare of the surrounding vicinity, that is, the "dump," the railroad tracks, and the vacant areas. Conversely, the use of the property, the business of the complainants, and their contracts with their employees and customers would be interrupted without any hope of legal compensatory redress from the municipality.
It was in view of such emergent and critical circumstances that I resolved in a spirit of equity to afford temporary protection to the private property and private business of the complainants from molestation which might ultimately be adjudged to be unreasonable and arbitrary.
However, I expressed the idea "that the validity of the ordinance should appropriately be determined at law through the avenue of certiorari." 138 N.J. Eq. (at p. 600);49 Atl. Rep. 2d 491. See my opinion in Esplanade Amusement Co.
v. Asbury Park, 136 N.J. Eq. 356; 42 Atl. Rep. 2d 206.
I anticipated that the remedy at law would be diligently pursued but, like some household visitors, the complainants received such hospitable treatment in this forum that they decided to remain here. The cause has been submitted to me on final hearing. The defendant iterates in its answer the point initially projected that this court ought not assume jurisdiction to determine the validity of the ordinance.
Assuredly there is no recognized procedure by which this court can reverse the judgment of the municipal recorder or review the action of the justice in his denial of the application for a writ of certiorari. I am nevertheless now beseeched to advise a final decree invalidating the zoning ordinance and granting to the complainants a permanent injunction against the enforcement of the prohibitory terms thereof in respect to the enterprise conducted by the complainants.
It must be acknowledged that where the rights of individuals are invaded by the official acts of governing bodies exercising municipal powers in an illegal manner, the parties thus aggrieved ought to seek redress by certiorari.
Mr. Justice Van Syckel remarked in Bloomfield v. Glen Ridge,55 N.J. Eq. 505; 37 Atl. Rep. 63: "It is suggested that the equity jurisdiction should be retained, even though *Page 767 
the appropriate remedy would have been by suit at law, because the facts are undisputed, and the rights of the parties could now be determined and finally adjudged without requiring the complainants to resort to further litigation. There is a discretionary power to retain the suit, and finally adjudicate upon the rights of the parties; but it has been exercised in rare cases, and under peculiar circumstances." Vide, also,Brunetto v. Montclair, 87 N.J. Eq. 338; 100 Atl. Rep. 201.
I have implied from a study of the relevant decisions that where irreparable damage may in reasonable probability ensue to the injury of the property rights of the complainants from the questionable action of the municipal officials, equity will supply them in emergent circumstances with temporary protection. But there is as yet a scarcity of authority sustaining the policy of courts of equity to determine conclusively the validity of municipal ordinances.
The cases which I cited in my previous memorandum and those noted in the brief of the complainants are with but one exception relative to the allowance of preliminary and temporary injunctive relief. It is to be observed that in Stirling Distributors v.Keenan, 135 N.J. Eq. 508; 39 Atl. Rep. 2d 79, the court of law (Court of Special Sessions) had already determined that the use of the alleged gaming device was lawful.
In the circumstances of the present cause I cannot predicate that the ordinance in the particular here challenged is demonstrably and positively invalid and that the action of the municipal representatives is "unlawful and in excess of their authority."
Local boards of health have been accorded legislative power toprohibit the slaughtering of animals within the municipality.R.S. 26:3-31, N.J.S.A. The power of a municipal governing body to zone its territory and impose restrictions upon the use of private properties is based upon the reasonable exercise of the police power of the state. R.S. 40:55-30, N.J.S.A. The burden of exposing the unreasonableness of the restriction falls upon the one who seeks to make use of his property in a manner forbidden by the ordinance. *Page 768 Grant v. Board of Adjustment of Haddon Heights,133 N.J. Law 518; 45 Atl. Rep. 2d 184.
Here the question of the validity of the ordinance in its application to the complainants is fairly debatable and controversial in law and fact, and consequently it cannot be definitely assumed that the acts of the municipal authorities, the Board of Adjustment, and the recorder were entirely arbitrary and capricious.
Manifestly the basic vexata quaestio between the parties is one of law and not of equity. I will permit the existing restraint to continue and defer the advisement of a final decree, to enable the complainants to apply to the Supreme Court for relief, provided they act with diligence and expedition.
 * * * * * * *
Since the filing of the foregoing opinion, the complainants herein have presented on certiorari the controversial issues to our former Supreme Court, the opinion of which is reported., subnom., Iannella v. Johnson, 136 N.J. Law 514; 56 Atl. Rep.
2d 894; affirmed, 137 N.J. Law 659; 61 Atl. Rep. 2d237. The defendants now seek a dissolution of the preliminary restraint granted in this cause. The complainants, in opposition, express their intention to appeal from the judgment of the Court of Errors and Appeals to the United States Supreme Court, and seek a continuance of the existing restraint until the proposed appeal is determined.
The complainants have exhausted their remedies in our State courts, and according due recognition to the decisions rendered, a further continuance of the restraint by this court is inappropriate. A final judgment dismissing the cause will be granted. *Page 769